[Civ. No. 25241. First Dist., Div. Four. June 17, 1968.]

THEODORE KINSEY, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

James D. Nunes, Public Defender, and James H. Newhouse, Assistant Public Defender, for Petitioner.

Thomas C. Lynch, Attorney General, Donald F. Granberg and Michael J. Kelly, Deputy Attorneys General, for Respondent and Real Party in Interest.

RATTIGAN, J.—Pursuant to subdivision (i) of Penal Code section 1538.5, petitioner seeks review of the validity of a seizure whereby a certain quantity of heroin was obtained by the police. The heroin, which was admitted in evidence at petitioner's preliminary examination upon a charge of its possession (Health & Saf. Code, § 11500), was seized when a police officer forcibly entered petitioner's hotel room. Petitioner challenges the seizure—and unsuccessfully moved below to suppress the evidence—upon the ground that the officer, although in possession of a warrant which authorized a search of the room, did not comply with the notice requirements of Penal Code section 1531.[1]

---

[1] "1531. The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

We issued the alternative writ in order to examine petitioner's contentions in the light of the Supreme Court's recent decision in *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706]. Having done so, we conclude that the circumstances hereinafter discussed were such as to excuse the officer from complying with section 1531; that the ensuing entry and seizure were therefore reasonable; and that the petition must be denied.

The search warrant was issued by a municipal court on October 5, upon an affidavit executed on the same date by Sergeant Hilliard of the Oakland Police Department. The affidavit recited Hilliard's position and experience, plus facts which established the reliability of a confidential informant described as "X." According to the affidavit, "X" informed Hilliard on October 2 that he had just been present in petitioner's hotel room on that day; that he had observed eight $20 balloons of heroin there; and that petitioner had told "X" that he could purchase such balloons at any time by contacting petitioner at the room. The affidavit also identified the hotel room as petitioner's and its location as room 306 at 2908 San Pablo Ave. The warrant which thereupon issued authorized a search of petitioner's person and the room.

At a daylight hour ("10, 10:30") on the morning of October 5, Sergeant Hilliard and several other police officers went to the San Pablo Avenue address (a hotel) to serve the warrant. Officer Romero and some of the other officers went to the corridor outside room 306. Romero, the just-issued search warrant in his possession, "listened" at the closed door for about three minutes. He could hear "a male and a female talking" in the room. Then a hotel maid came along in the corridor where Romero was standing, knocked on the door, and opened it with a key. Officer Romero had given the maid no instructions; there was no conversation between them. No one connected with the hotel had been instructed to open the door, and the maid's action was upon her own initiative.

Officer Romero could see that the door was "held closed by a night chain" after the maid opened it, but he could not see into the room. The maid said, "There's somebody out here to see you." A male voice from inside the room said "Who?" The maid replied, "Some men." After the maid's reply (according to Romero's unchallenged testimony at the hearing on the motion to suppress), nothing happened until at least two—and possibly five—minutes had elapsed. Then the officer heard a "rustling, shuffling" noise in the room. Concluding that narcotics were being disposed of inside, he said

"Police" and kicked the chained door in.

Petitioner, dressed in underclothes only, was standing by the bed in room 306; a nude woman was in the bed. Officer Romero served the search warrant upon petitioner. A search of the room turned up the heroin in question.

Noncompliance with the notice requirements of Penal Code section 1531, and the similar requirements of section 844 relative to execution of an arrest warrant, may be excused when the officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. (*People* v. *Rosales* (1968) 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Gastelo, supra,* 67 Cal.2d 586, at pp. 588-589, and cases cited.) The officer's belief cannot be justified by a general assumption that certain classes of persons are more likely than others to resist arrest, attempt to escape, or destroy evidence; it must be based upon the facts of the particular case. (*People* v. *Rosales, supra*; *People* v. *Gastelo, supra.*)

From his observation at the door of room 306, Officer Romero had actual knowledge (1) that a man was in the room, (2) that the man knew that unidentified "men" were outside the door "to see you," and (3) that time was fleeting without any acknowledgment of the visitors' presence. From the same observations and from the warrant and its supporting affidavit, Romero had reasonable cause to believe (1) that the man in the room was petitioner, (2) that he was in possession of narcotics beyond the chain-held door,[2] and (3) that he was disinclined to receive strangers. The midmorning hour did not command the conclusion that anyone was in bed, and Romero knew that two people in the room were awake. (Cf. *People* v. *Arellano* (1966) 239 Cal.App.2d 389, 391 [48 Cal. Rptr. 686].)

After a significant delay in which petitioner could have been about the destruction of narcotics, Officer Romero heard a "rustling, shuffling" noise in the room. His description of the noise suggests surreptitious movement, and his terminology was not qualified or challenged at the hearing below. The ease and speed with which the disposal of narcotics can be accomplished are well recognized. (*People* v. *Carrillo*

---

[2]Officer Romero's information concerning petitioner, and narcotics, in the room was three days old, because it dated from the information communicated to the police by "X" on October 2. There was evidence that on October 5, the day the warrant was executed, Sergeant Hilliard had received specific information that petitioner was then in the room.

(1966) 64 Cal.2d 387, 392 [50 Cal.Rptr. 185, 412 P.2d 377].) The "rustling, shuffling" noise reasonably developed Romero's suspicion that destruction of evidence was either in progress or imminent, as well as his conclusion that precipitate entry was necessary to frustrate it. The "facts of the particular case," therefore, excused the officer's noncompliance with Penal Code section 1531.

An opposite result was reached in *Gastelo* and in *Rosales* for the reason that there was nothing in the record of either case to justify noncompliance. (*People* v. *Gastelo, supra,* 67 Cal.2d 586 at p. 589 ["nothing"]; *People* v. *Rosales, supra,* 68 Cal.2d 299 at p. 305 ["no evidence"].) The present case is distinguishable; in the record before us, there is something. We hold it to be enough.

The alternative writ is discharged and the petition is denied.

Devine, P. J., and Christian, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied August 14, 1968.