[Crim. No. 11297. First Dist., Div. Four. Dec. 31, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY WEBB et al., Defendants and Appellants.

COUNSEL

Kennedy & Rhine, Dennis J. Roberts and Michael J. Kennedy for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James and Edward P. O'Brien, Assistant Attorneys General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DEVINE, P. J.**—This is an appeal by three defendants, Webb and two Schlemmes, who had pleaded guilty to certain counts of an indictment, but who nevertheless are entitled to appeal on the ground of illegal search under the provisions of Penal Code section 1538.5. All three appellants pleaded guilty to count one of the indictment, which charged possession of cocaine and methadone. (Health & Saf. Code, § 11500.) Webb also pleaded guilty to count four, which charged receiving of one item of stolen property, an oil painting. (Pen. Code, § 496.)

It is convenient to divide the discussion into two parts, the first having to do with evidence which was found in Webb's bedroom, and the second with evidence found elsewhere on the premises at 1530 Lawton Street, San Francisco.

## I. THE WEBB ROOM

The officers entered the house properly, identifying themselves and stating the fact that they had a search warrant. They went to what we shall call the Schlemme bedroom. An officer made an appropriate announcement pursuant to Penal Code section 1531. The officer then knocked loudly on the Webb bedroom door. Nothing happened, so the officer knocked again. There was no response, and, after waiting 30 to 45 seconds, the officer kicked in the door. He observed a man on a bed in the room. The man identified himself as Gary Webb. The officer advised Webb that he was a police officer and that he had a search warrant for the premises. The officer then went over to the bed, reached under the mattress and pulled

up a fully loaded .25 automatic pistol. The officer also observed "large amounts of narcotics lying all over the room." The stolen picture was found hanging in Gary Webb's bedroom.

 Section 1531 of the Penal Code was not complied with. This section refers to "any outer or *inner* door" (italics added) and plainly was applicable to the bedroom door. Respondent states that section 1531 does not require an officer to knock on every door, state his identity and intentions, and wait for a response. Under certain circumstances, this is so. In *People* v. *Livermore,* 30 Cal.App.3d 1073 [106 Cal.Rptr. 822], the officers entered the home in full compliance with section 1531. Thereafter, one of the officers walked into a bedroom, the door to which was open, and announced himself as a police officer as he entered. This was held to be substantial compliance. There was not present the peril which is produced by unproclaimed intrusion. But the case does not justify the conclusion that section 1531 does not apply to inner doors. The opinion does not say so, and we deem it could not because of the explicit terms of section 1531.

 There are, to be sure, two exceptions to the knock and notice rule: (1) where there has been substantial compliance; and (2) where there is excused noncompliance. (*People* v. *Hall,* 3 Cal.3d 992, 998 [92 Cal. Rptr. 304, 479 P.2d 664].) But there was not substantial compliance by the mere knocking and waiting. Minimum compliance with the rule includes an effort by the officers, prior to entry, to communicate to persons inside that they seek to be admitted in order to discharge their duties as law enforcement officers. (*Greven* v. *Superior Court,* 71 Cal.2d 287, 293 [78 Cal.Rptr. 504, 455 P.2d 432]; *Duke* v. *Superior Court,* 1 Cal.3d 314, 320 [82 Cal.Rptr. 348, 461 P.2d 628]; *Garcia* v. *Superior Court,* 29 Cal. App.3d 977, 981-982 [106 Cal.Rptr. 98].) There is no evidence at all that failure to comply with the statute was excusable on the ground of increased peril to the officers or to anyone else, or of imminent destruction of evidence.

*People* v. *Peterson,* 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187], is not helpful to respondent. In that case, the officers gave the necessary notice but committed a technical break-in by opening an unlatched screen door before the notice was given. Because the officers had full view of the occupants of the residence and the officers were immediately visible to those persons, there was neither violation of privacy of the individuals in their own residence nor danger of injury to the officers or to the occupants resulting from sudden confrontation.

No satisfaction is gained from the individual case in which a defendant, admittedly guilty of receiving stolen property and of a narcotics offense, prevents the use of evidence against him by reason of failure of an officer to comply with the statute, particularly when the police have obtained a search warrant and have complied at one or two stages of their entry. But it has been said, in *People* v. *Rosales,* 68 Cal.2d 299, 304 [66 Cal. Rptr. 1, 437 P.2d 489]: " 'However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application.' " ▮ Besides, that particular application of the exclusionary rule which results from noncompliance with either Penal Code section 844 or Penal Code section 1531 is somewhat different from the application in other cases, in that it is intended to give a benefit to innocent persons and, more particularly, to the police officers themselves, that is over and above the general protection of privacy which is secured by the Fourth Amendment. A perfectly innocent person may be within the closed door; or a person within, whether guilty or innocent, may respond to the forced entry with gunfire. One particular officer may be willing to risk the chance of sudden violence, but the rule with its exclusionary result is also directed toward the protection of his fellow officers and to other persons by reason of its deterrent effect. The fact that the omission to give the required announcement may have resulted from mistake or inadvertence does not alter the case. It is necessary to suppress the evidence which was taken from the Webb bedroom.

## II. THE SEARCH WARRANT

Although the evidence taken from the Webb bedroom must be suppressed, reference to the objects which were found therein must be made in discussing the search warrant, not by way of confirming any of the statements in the affidavit, for a search may not be justified by what it turns up, but by way of showing the grounds upon which the warrant itself was issued and the probable cause for its issuance. There was other evidence found in the premises than that which was in the Webb room. Narcotics were found in the Schlemme bedroom, in the living room, and in the dining room. A grandfather clock and an antique bar were found in the living room. These were the subject of one of the receiving stolen property counts against Webb. Appellants' attack on this evidence necessarily is based on a challenge to the search warrant and the affidavit sup-

porting it. This challenge is made (a) to the affidavit considered on its face, (b) on the reliability of the informant, and (c) on asserted omissions of information which it is contended should have been supplied in the affidavit.

### A. *The Affidavit Considered On Its Face*

On April 18, 1972, a magistrate issued a search warrant on the basis of an affidavit prepared by affiant Gino Marionetti, a San Francisco police officer. The affidavit disclosed the following information:

1. Affiant had had several interviews with one John Doan, a heavy narcotics user in custody on a burglary charge; the most recent interview occurred at the Hall of Justice on April 17, 1972.

2. Affiant knew John Doan was a reliable informant in that on April 13, 1972, Doan had provided information which led to the recovery of stolen items taken in a robbery from 2900 Broadway on April 6; Doan had provided additional information to the police on April 11, leading to the recovery of other stolen objects.

3. Doan informed affiant he had personally observed several stolen items at 1530 Lawton Street, which included a Morelli painting taken in a Kentfield, California burglary and valued in excess of $20,000. Doan told affiant that he had observed this painting hanging in the bedroom of the residence of 1530 Lawton Street, and described the painting as a picture of a farmhouse.

4. Affiant called the San Rafael sheriff's office about the Kentfield burglary and learned that a Morelli painting valued at $20,000 had been stolen.

5. Doan informed affiant that he saw a grandfather clock in the living room of the above residence and stated, without explaining, that the clock had been stolen in a Sausalito burglary. Doan also saw an antique bar on the premises, which had been stolen. Doan informed affiant the information regarding the painting, the clock and the bar being stolen was given to him by appellant Webb.

Doan advised affiant that narcotics were located on the premises at 1530 Lawton Street and that he had observed cocaine and heroin on the premises. He was able to identify the narcotics because he is a heavy user of narcotics. Doan stated he had made many purchases of narcotics from

Webb on the premises over a two-year period, and that Webb exchanged "dope" for various stolen items. Doan stated he made the purchases in various rooms in the house, such as the kitchen, bedrooms, and living room. Based on his experience in making these purchases, Doan said, he declared that narcotics were located throughout the home, including the basement.

Affiant stated that Doan and two police officers went to 1530 Lawton Street on April 18, 1972, and confirmed Doan's description of the premises as a white stucco house.

Appellants' challenge to the affidavit on its face is made under several points, which we state separately, together with our disposition of each.

*Objection No. 1:* The affidavit does not disclose any effort on the part of the police to show that Webb actually lived at the described address. The police could have informed the occupants of their information, whereupon the occupants would either exculpate or inculpate themselves. If they did the latter, the information could be used to get a search warrant.

*Disposition:* The fact that Webb actually lived at the described address was stated by Doan. ■ The police need not have corroborated this. The suggestion about their interviewing the occupants is totally unacceptable. To require police inquiry in such a case as this would simply defeat the process of the search warrant in nearly every case. The evidence surely would be gone by the time the police would return.

*Objection No. 2:* The circumstances of Webb's "extraordinary confession" are not set forth.

*Disposition:* It seems likely that the conversation between Doan and Webb was more related to negotiation between the two than confession by one to the other. ■ But this does not mean that the affidavit on its face is defective.

*Objection No. 3:* The affidavit does not show whether Doan had firsthand information about the stolen grandfather clock and antique bar.

*Disposition:* ■ Doan had seen these articles in the premises about 17 days before the date of the affidavit. Webb himself, according to Doan, had stated that these articles had been stolen.

*Objection No. 4:* There was no reference to the time of Doan's purchase of narcotics at the Lawton Street address.

*Disposition:* ■ As stated above, Doan had been on the premises a little more than two weeks before the time of the affidavit. It was stated

that "he goes" there for narcotics, indicating a continuing process. (See *People* v. *Tillman,* 238 Cal.App.2d 134, 139 [47 Cal.Rptr. 614].) By interpreting the affidavit in a commonsense rather than a hypertechnical manner, the magistrate could readily conclude that the information was not stale but reasonably current. (*People* v. *Superior Court (Johnson)* 6 Cal.3d 704 [100 Cal.Rptr. 319, 493 P.2d 1183].)

### B. *Reliability of the Informant*

*Objection:* That the magistrate, having been informed that Doan was a heavy user of narcotics and was, at the time of making the affidavit, in custody on a burglary charge, could not reasonably find him to be a reliable informant. A good deal of reliance is placed on the decision in *Pollock* v. *Superior Court,* 272 Cal.App.2d 548 [77 Cal.Rptr. 565].

*Disposition:* Reliability of the informant did not rest solely on his declarations, after he was in custody, against Webb, which would be suspect (*People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Amos,* 181 Cal.App.2d 506, 509 [5 Cal.Rptr. 451]; *Ovalle* v. *Superior Court,* 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385]), but more particularly on the proved information which had led to recovery of stolen items on April 6 and April 11. Also, his information about the stolen painting was corroborated by the police report that it had indeed been stolen. It is possible, and quite probable, that Doan had had something to do with the earlier thefts, but this would not invalidate the information that he gave to the police, nor would it necessarily destroy his credibility. Many informants are themselves charged with or under investigation for criminal activity. (*People* v. *Hambarian,* 31 Cal.App.3d 643, 655 [107 Cal.Rptr. 878].) The *Pollock* case was one involving juvenile informants who were in custody, whose reliability had not been tested and whose information, unlike that given by Doan, was without corroboration of any kind. The officers acted upon this deficient reporting, not to get a search warrant, but to make an arrest. More evidence is required in support of probable cause to make a lawful arrest without a warrant therefor than is required to justify the issuance of a search warrant. (*Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *People* v. *Madden,* 2 Cal.3d 1017, 1023 [88 Cal.Rptr. 171, 471 P.2d 971]; *People* v. *Johnson,* 13 Cal.App.3d 742, 750 [92 Cal.Rptr. 105].)

### C. *Asserted Deficiency of Information*

 Although appellants challenge the information given in the affidavit as fatally faulty, they do so only by means of pointing to the in-

formant's generally unsatisfactory and criminal character, and not by specific allegations of falsity. Such an attack cannot succeed. *(People v. Hambarian, supra,* 31 Cal.App.3d at p. 652; *Theodor* v. *Superior Court,* 8 Cal.3d 77, 103 [104 Cal.Rptr. 226, 501 P.2d 234].)

Indeed, appellants do not so much allege falsity in the affidavit, but omissions. Because of these omissions, appellants urge that they should have been permitted to interrogate Doan at the superior court hearing of the motion to suppress evidence, or alternatively, that the judge of the superior court should have ruled that the magistrate abused his discretion in issuing the search warrant without interrogating Doan, as the magistrate had the right to do under Penal Code section 1526, subdivision (a).

Now for the omissions, as pointed out to the superior court and to us:

1. ■■■ It was urged that the police did not inform the magistrate of Doan's extensive rap sheet. But the police had informed the magistrate that Doan was a heavy user of narcotics and, in fact, had purchased them from Webb. A magistrate does not need to see a rap sheet to know that such a person surely does not come within the category of the "good citizen" informant.

2. ■■■ It was pointed out that the police did not inform the magistrate that Doan himself had been charged with commission of the robbery at 2900 Broadway and of the probability that Doan himself had been the burglar who had stolen the valuable painting in Kentfield. But it is doubtful that this information would have given pause to the magistrate in view of Doan's declarations to the police that he was an habitual purchaser of narcotics from Webb. (The only points made on the narcotics issue at the motion to suppress were (a) that certain of the statements were conclusional, but these were surplusage because others were outright declarations; and (b) that the information was stale, a subject considered above.) It seems highly unlikely that the magistrate would have believed that Webb's acquisition of a valuable painting, a grandfather clock and an antique bar from the man to whom he had sold narcotics was innocent.

3. Appellants made reference to the matter of a deal between Doan and the police for leniency in the form of a county jail sentence. But at the superior court hearing the suggestion was that Doan "has now" worked out a deal. The motion to suppress was heard on August 11, 1972; the affidavit was made on April 18, 1972. There was no offer to show that a deal had been made prior to the issuance of the search warrant.

All things considered, the magistrate did not abuse his discretion in issuing the search warrant without interrogating Doan, nor were omissions by the police to state certain facts sufficient to invalidate the affidavit and the warrant.

Although the judgment of conviction of Webb upon plea of guilty must be reversed and the plea of guilty set aside, the prosecution must be permitted to effect a reinstatement of the dismissed counts if the court finds that said counts were dismissed because of the plea of guilty. (*People* v. *Fry,* 271 Cal.App.2d 350, 359 [76 Cal.Rptr. 718]; *People* v. *Landry,* 276 Cal.App.2d 370, 377 [80 Cal.Rptr. 880].)

The judgment as to Webb is reversed, with instructions to the trial court to set aside his plea of guilty and to proceed in accordance with the views expressed herein.

The judgments of conviction of appellants Gary Schlemme and Norma Schlemme are affirmed.

Rattigan, J., and Christian, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 27, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.