[No. AO16895. First Dist., Div. Five. Mar. 12, 1984.]

THE PEOPLE, Plaintiff and Appellant, v.
RONALD GENE PIPITONE et al., Defendants and Respondents.

1114

**COUNSEL**

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein,

Assistant Attorney General, Herbert F. Wilkinson and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Appellant.

R. Brewster Thompson, Jeanne M. Lynch, Robert D. Reichman and Martin A. Kotler, under appointments by the Court of Appeal, James Leonard Crew, J. Thomas Sherrod, Jules F. Bonjour, Jr., Bonjour, Gough, Stone & Remer, Bonjour & Gough, James R. Jenner, Public Defender, and Louisa Havstad, Assistant Public Defender, for Defendants and Respondents.

## OPINION

**KING, J.**—The People appeal from orders of dismissal of various narcotics charges against Ronald Gene Pipitone, Donald Vincent Dorso, Janet Louise Cardoza, David Alan Brown, Susan Evelyn Foley, and Jeffrey Hamilton Seibold.

An information charged all six defendants with possession of cocaine for purposes of sale (Health & Saf. Code, § 11351) and possession of barbiturates (Health & Saf. Code, § 11377). The information also charged Pipitone with possession of heroin (Health & Saf. Code, § 11350), and charged Cardoza with a second count of possession of barbiturates and driving while under the influence of a drug (former Veh. Code, § 23105, subd. (a)).

Defendants had moved unsuccessfully in the municipal court for suppression of evidence seized in a residential search pursuant to a purported search condition of Cardoza's probation. (Pen. Code, § 1538.5.) After the information was filed they moved to set it aside. (Pen. Code, § 995.) The superior court granted the motion, asserting that there was no valid probation condition, that the officers did not exercise good faith in searching the residence, and that in any event there is no good faith exception to the exclusionary rule. We reverse the orders of dismissal.

Shortly after midnight on May 4, 1981, Fremont Police Officer John Schlimm was notified by a police dispatcher that an anonymous source had reported that defendants Dorso, Cardoza, and Brown were dealing narcotics from a Fremont residence and that a white van and a brown Camaro were being used in drug trafficking. Schlimm was familiar with all three persons, and had previously arrested Cardoza for drug-related offenses.

Schlimm and another officer drove to the address in an unmarked car. After a period of surveillance, at about 2 a.m., they saw Cardoza leave the house and drive off in a brown Camaro. They followed her, and eventually

had a Union City police car stop her because she had been driving erratically. Schlimm concluded that she was under the influence of PCP.

Schlimm asked Cardoza whether she was currently on probation or parole. She answered that she was on probation. He asked whether one of the conditions of probation was to submit her person, vehicle, and residence to a warrantless search, and she responded affirmatively. She said she lived at the Fremont residence. Schlimm received radio verification that Cardoza was on probation with a search condition, and was also told that she had an outstanding arrest warrant. He arrested her; his partner searched her car and found an aspirin tin containing secobarbitol.

Schlimm, his partner, and three other officers then went to the Fremont residence. Schlimm knocked on the front door; David Brown answered. Schlimm asked if Dorso was home. Brown said he was not, but then said he was home but was sleeping. Schlimm said that the officers were there to conduct a search pursuant to Cardoza's probation search condition. He then "heard some things from another part of the house." Schlimm testified, "I heard someone running, and I heard something—falling and rattling and saw a male through the doorway of the kitchen moving quickly." Schlimm immediately entered the house and went to the kitchen, where he found Pipitone, Foley, and Seibold, and saw cocaine and items indicating cocaine freebasing.

Schlimm next went to a rear bedroom. He knocked on a closed door, received no response, and then entered and found Dorso on a bed. He saw cocaine paraphernalia and a box containing "a little bit" of white powdery debris. Dorso told Schlimm which bedroom was Cardoza's; Schlimm and his partner searched her room and found more cocaine paraphernalia and powder residue.

On September 7, 1978, Cardoza had been placed on three years' probation with certain conditions, including that she "submit her person, her premises, her vehicle to search at anytime day or night upon request of a police officer or probation officer with or without a search warrant." On April 1, 1980, her probation was summarily revoked. A hearing after revocation was set for April 21. On that date the court restored Cardoza's probation, stating only, "The previous order revoking probation is set aside and the defendant is restored to probation. [¶] Now I don't know how they happened to think that you were driving under the influence of drugs but I better warn you that you better not be. [¶] So report to your probation officer." The court clerk checked a box on the minute order form indicating that "All terms and conditions to remain in full force and effect."

 The People challenge the superior court's determination that the search of Cardoza's residence was unlawful for want of an effective probation search condition. They rely on *People* v. *Barkins* (1978) 81 Cal.App.3d 30, 32-33 [145 Cal.Rptr. 926], which held that summary revocation of probation does not itself terminate probation or its conditions, as due process hearing rights have not yet been afforded, and that the conditions therefore continue if probation is restored.

Defendants contend that *Barkins* was wrongly decided. They further argue that the present case should be governed by *Freytes* v. *Superior Court* (1976) 60 Cal.App.3d 958, 962 [132 Cal.Rptr. 26], which found unlawful a probation search performed after a court summarily revoked probation that had included a search condition and then restored probation with six express conditions not including a search condition.

*Freytes* is to be distinguished from the present case. The rationale for the ruling in *Freytes* was not, as defendants would have this court declare, that summary revocation of probation eliminates all probation conditions. The court's rationale was that the restoration of Freytes' probation upon six express terms excluding a search condition extinguished the prior search condition under the doctrine of *expressio unius est exclusio alterius* (the mention of one thing implies the exclusion of another thing not mentioned). (60 Cal.App.3d 958 at p. 962.) Here, upon restoration there was no express imposition of conditions to the exclusion of a search condition, but a restoration of the previously ordered probation. The court's warning to Cardoza not to drive under the influence of drugs and its directive to report to her probation officer cannot reasonably be construed as anything more than a warning to "stay in line," especially given the failure to specify any terms for reporting to the probation officer. Unlike *Freytes,* the court in restoring probation took no action that expressly or impliedly removed the search condition.

The decision in *Barkins* is sound. As a matter of due process, summary revocation cannot affect a grant of probation or its conditions, given the right to a hearing as set forth in *People* v. *Vickers* (1972) 8 Cal.3d 451, 458-459 [105 Cal.Rptr. 305, 503 P.2d 1313], except to the extent that probation is suspended pending the hearing. Summary revocation causes only a temporary suspension; it is simply a device by which the defendant may be brought before the court and jurisdiction retained before formal revocation proceedings commence. (*People* v. *Barkins, supra,* 81 Cal.App.3d at p. 32.) If probation is restored there has been in effect, no revocation at all.

 Thus, when Cardoza's probation was restored with no express or implied change in conditions, it was as if there was no change in her status.

The search condition remained in effect. Cardoza cannot now claim she was denied notice of the continued search condition, as she herself believed that she was subject to a warrantless probation search. The superior court erred in failing to follow *Barkins*.

■ Defendants contend that even if the search condition remained in effect, the superior court's determination that the search was conducted in bad faith should be upheld because there was substantial evidence that the officers used the search condition as a pretext for searching the entire residence without a warrant or probable cause. (See *People* v. *Pipitone* (1978) 86 Cal.App.3d 681 [152 Cal.Rptr. 1].) The "pretext" argument was asserted unsuccessfully before the magistrate.

■ Defendants misapprehend the function of this court in reviewing the superior court's adjudication of the 995 motion. In proceedings under Penal Code section 995 the *magistrate* is the finder of fact; the superior court merely sits as a reviewing court, and must resolve all conflicts and draw all legitimate inferences in favor of the information. The appellate court in effect disregards the ruling of the superior court and directly reviews the magistrate's ruling. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) Only if the superior court ruled on a motion under Penal Code section 1538.5, in which the superior court is the finder of fact, must that court's findings be upheld if supported by substantial evidence. (*Id.*)

■ Thus, whether there was substantial evidence to support the superior court's conclusion on the factual issue of bad faith is irrelevant to this court's review, which is limited to the *magistrate's* factual determination against defendants. On the record of the preliminary hearing it cannot be said as a matter of law that the officers used the search condition as a pretext for conducting an unlawful search.

■ Defendant Dorso makes the additional argument that the 995 motion was properly granted because the officers failed to comply fully with statutory knock-notice requirements (Pen. Code, §§ 844, 1531), in that they failed to afford defendant Brown sufficient time to comply with the demand for peaceful entry before entering the residence and going through the open door to the kitchen. The contention lacks merit. The magistrate properly determined that the noises Officer Schlimm heard upon announcing the reason for his presence were sufficient to support his asserted belief that it was necessary to enter and proceed to the kitchen to keep persons from destroying evidence. (*People* v. *Negrete* (1978) 82 Cal.App.3d 328, 336 [147 Cal.Rptr. 101] [compliance excused when officer saw defendant approach door, look at him in apparent recognition, and then "run back toward the

easily flushable heroin which had been left in the bathroom"]; *Kinsey* v. *Superior Court* (1968) 263 Cal.App.2d 188, 191 [69 Cal.Rptr. 556] ["rustling, shuffling" noise suggested surreptitious movement, and ease and speed with which disposal of narcotics can be accomplished are well recognized]; see *People* v. *Rosales* (1968) 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489] [excuse from compliance with knock-notice requirements must be based on facts of particular case].) Dorso asserts Schlimm's testimony that he had no indication that anyone was trying to dispose of evidence *prior* to the time he arrived at the front door, but this was irrelevant to Schlimm's asserted suspicions *after* he knocked on the front door.

■ Dorso also argues that the police failed to comply with knock-notice requirements when they entered his bedroom. On this point Dorso is correct. Merely knocking on a closed inner door and waiting before entry does not amount to compliance with the knock-notice law. "Minimum compliance with the rule includes an effort by the officers, prior to entry, to communicate to persons inside that they seek to be admitted in order to discharge their duties as law enforcement officers." (*People* v. *Webb* (1973) 36 Cal.App.3d 460, 465 [111 Cal.Rptr. 524].) Thus, in *Webb,* the court found that an officer violated the knock-notice law when he knocked on a bedroom door twice with no response, waited 30 to 45 seconds, and then kicked in the door without announcing his presence and purpose. (*Id.,* at pp. 464-465.) The decision in *Webb* governs the entry into Dorso's bedroom: Officer Schlimm violated the knock-notice law when he entered the bedroom after simply knocking on the door and receiving no response.

The knock-notice violation did not, however, support granting of the 995 motion. Counsel stipulated in the municipal court that the small amount of white powdery debris seized in Dorso's bedroom had not been analyzed. Thus, the evidence did not materially affect the People's showing at the preliminary hearing.[1]

The orders of dismissal are reversed.

Low, P. J., and Haning, J., concurred.

The petitions for a rehearing were denied April 10, 1984, and the petitions of appellants Pipitone, Brown, Foley and Cardoza for a hearing by the Supreme Court were denied June 21, 1984. Bird, C. J., was of the opinion that the petitions should be granted.

---

[1]On remand, the evidence seized in Dorso's bedroom must be suppressed upon a section 1538.5 motion, absent a different factual showing.