[No. H010161. Sixth Dist. Sept. 16, 1993.]

In re BABAK S., a Person Coming Under the Juvenile Court Law.
PEDRO SILVA, as Chief Probation Officer, etc., Plaintiff and Respondent,
v.
BABAK S., Defendant and Appellant.

**COUNSEL**

Anthony Boskovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MIHARA, J.—**

I.

Babak S., a minor, appeals from an order committing him to the California Youth Authority after the juvenile court sustained a petition filed pursuant to Welfare and Institutions Code[1] section 777, alleging that the minor had violated the conditions of his probation by living in the United States with his parents, and by associating with a known probationer or gang member. On appeal, the minor contends the order must be reversed because (1) the former allegation was premised upon an unconstitutional probation condition banishing him to Iran; (2) he was not under order to refrain from associating with probationers or gang members; (3) assuming he was under such order, there was insufficient evidence to sustain the allegation; (4) reconsideration of the probationer/gang allegation is prohibited by principles of double jeopardy; and (5) the juvenile court was without authority to impose a suspended Youth Authority commitment. For reasons explained below, we

---

[1]All unspecified section references are to the Welfare and Institutions Code.

find the first and last contentions to be meritorious. Accordingly, we reverse the dispositional order and remand for further proceedings.

## II. Background

Babak first became a ward of the juvenile court in 1989 when he admitted the commission of four misdemeanor offenses pursuant to a negotiated agreement.[2] The court admitted Babak to probation with various conditions, and ordered the minor detained at a county ranch facility.

During the next year and a half, the court sustained three supplemental petitions. (§ 777.) Two of these petitions arose after the minor escaped from the ranch; the third petition was filed as a result of the minor's failure to attend school regularly after his release from the ranch facility. At the disposition hearing on the third petition, the court ordered all previously imposed conditions of probation to remain in effect and imposed an additional condition prohibiting Babak from associating with any "known probationer, parolee, or gang member."

In July 1991, Babak was charged with the concealed possession of a dagger. (Pen. Code, § 12020, subd. (a).) The court sustained the petition and continued Babak on formal probation subject to various conditions.

Some two months later, in September 1991, a supplemental petition was filed alleging that Babak, then 16 years of age, had violated the terms of his probation by associating with a known probationer. The petition was sustained and Babak was ordered back to the ranch. Another supplemental petition followed in November 1991, this time charging the minor with the consistent violation of ranch rules. After the petition was sustained, the minor was again returned to the ranch.

On January 30, 1992, a petition alleging ranch failure was filed after Babak and another ranch detainee fought over their respective gang affiliations. In a report to the court, Babak's probation officer, Christine Frederick, recommended that a Youth Authority commitment be suspended on condition that the minor move to Iran to live with his parents or relatives and that he not return to the United States without prior court approval. This recommendation was premised upon the parents' request that Babak be permitted to live with them in Iran.

On February 18, 1992, the juvenile court sustained the petition. In accordance with the recommendation of the probation officer, the court committed

---

[2]Originally charged in three original petitions with various felony and misdemeanor offenses, Babak admitted violating Penal Code sections 415, 242, 245, subdivision (a)(1), and 71.

the minor to the Youth Authority, said commitment to be suspended on condition that the minor (1) reside with his parents in Iran for two years, (2) report to the probation officer as directed, and (3) not change his place of residence without the prior approval of the probation officer. All previous orders which were consistent with the court's disposition were to remain in effect. Babak was ordered detained at juvenile hall until such time as he could be transported to the airport for his departure to Iran.

On July 13, 1992, Frederick received information that Babak was back in the United States. The following day, Frederick went to the minor's residence where she discovered Babak and Lonnie M. asleep in Babak's bedroom. Two days later, Frederick filed a supplemental petition alleging that Babak had violated the court's previous order by "living with his parents in the United States." The petition was subsequently amended to include an allegation that Babak had been in the company of Lonnie M., a "known probationer and gang member."

At a contested hearing on the petition, Frederick testified that on June 18, 1991, Babak was placed under a probation order forbidding his association with a probationer or gang member. The court then took judicial notice of its "own orders." Frederick went on to testify to her discovery of appellant and Lonnie, whom she described as a known probationer and gang member. Following his arrest on the underlying petition, appellant admitted that he had been back in the United States for over two weeks. When Frederick asked appellant why he hadn't contacted her following his return, appellant said, ". . . he was going to, but . . . hadn't done that yet."

Carl Tademaru testified that he was currently Lonnie's probation officer, and had supervised Lonnie on probation since 1991. In July 1991, Lonnie was involved in a stabbing incident which resulted in his confinement at the ranch. After his release, he had absconded and had not reported to Tademaru for the last two or three months. Sometime after he was discovered at appellant's home, Lonnie "self surrendered."

Testifying on behalf of her son, Mrs. S. testified that Babak had gone to Iran with his father and lived there for approximately two months. Babak had stayed with his maternal grandmother, who had died sometime after his arrival. After her death, Babak had nowhere else to stay because his father was quarreling with all the other relatives. For this reason, Babak's father decided the minor should return to the United States.

According to Mrs. S., Lonnie had slept overnight on four or five occasions since Babak's return. The two had spent time together at the family home;

however, Babak had not left the house since his return. Babak's father and mother were separated; the father was living in Iran.

Babak testified that he had gone to Iran with his father and had stayed there approximately two months. After his grandmother's death, he had no other relatives with whom he could stay, and his father had then decided he should return to the United States. Babak testified he "had to come back [because he] had no other choice".

Babak admitted his association and friendship with Lonnie, but testified Lonnie had told him he was no longer associated with a gang. Lonnie did not know whether he was on probation or not, but thought he was "off probation" because he was 18 and his case had been "cleared." Babak admitted that he had not called his probation officer during the six-week period since his return from Iran.

The juvenile court sustained the petition and held that the previous disposition had not been effective. The court justified its findings as follows: "Okay. As you know . . . before I can invoke [a] more restrictive disposition on [Babak] I'd have to find that . . . the previous disposition has not been effective in the rehabilitation of [the minor], and I'm prepared at this time to make such a finding. [¶] And I do that . . . for several reasons. First of all, he was personally aware of the law, his probation order that he was to go to Iran, come back here and then go back on probation. He came. He'd been here for three, two, three months and never reported to his probation officer. He's flagrantly violated a court order by doing that, and he's been on probation enough times and he's been at the ranch enough times to know he's got to stay in contact with his probation officer. And he flagrantly violated that court order, and I think that's sufficient enough to find that his previous disposition has not been effective in his rehabilitation.

"Now, when you take in consideration all the prior commitments that he's had, he's been given every chance. He's had every opportunity to do everything that the juvenile court has to offer, and he's . . . blown every one of 'em. He's really put handcuffs on me. I can't send him any other place but the California Youth Authority. And I think that's where the best place is for him."

The court then "lift[ed] the prior suspension of the California Youth Authority commitment . . ." and committed the minor to that institution for a maximum term of four years and seven months, with credit for time served.

### III. DISCUSSION

#### A. *The Banishment Condition*

Section 730 grants courts broad discretion in establishing conditions of probation in juvenile cases. The court may impose "[any] reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." However, "[a] condition of probation which (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality does not serve the statutory ends of probation and is invalid." (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290]; accord, *People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) Stated another way, "a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People* v. *Lent, supra,* at p. 486.)

Probation conditions have been upheld even though they restrict a probationer's exercise of constitutional rights if they are narrowly drawn to serve the important interests of public safety and rehabilitation (*People* v. *Keller* (1978) 76 Cal.App.3d 827, 839 [143 Cal.Rptr. 184]) and if they are specifically tailored to the individual probationer. (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373 [257 Cal.Rptr. 821]; *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1502 [281 Cal.Rptr. 6].) Conditions of banishment affect the probationer's basic constitutional rights of freedom of travel, association and assembly. (See, e.g., *People* v. *Beach* (1983) 147 Cal.App.3d 612, 620-623 [195 Cal.Rptr. 381]; *In re White* (1979) 97 Cal.App.3d 141, 148-149 [158 Cal.Rptr. 562].) Thus, in order to survive constitutional scrutiny, such conditions not only must be reasonably related to present or future criminality, but also must be narrowly drawn and specifically tailored to the individual probationer.

In the instant case, the People make no serious attempt to justify the banishment condition per se, and an analysis of relevant case law readily establishes that the condition at issue here does not pass constitutional muster.

In *People* v. *Bauer* (1989) 211 Cal.App.3d 937, 940 [260 Cal.Rptr. 62], a defendant convicted of false imprisonment and assault challenged a condition requiring that his residence be approved by the probation officer. (*Id.* at p. 943.) Bauer, who was 26 years of age, resided with, and had a close

relationship to, his parents. (*Id.* at p. 944.) The reviewing court struck the condition on the ground that it failed to satisfy the *Lent* test. The court also reasoned that the condition effectively banished the defendant since it forbade him from living with or near his parents, thereby impinging upon Bauer's constitutional rights to travel and freedom of association. (*Id.* at pp. 943-945.)

In *People* v. *Beach, supra,* an elderly widow convicted of involuntary manslaughter was placed on probation on condition that she relocate herself from the community where she had resided in her own home for 24 years. On appeal, the court struck the condition as unreasonably broad, not sufficiently related to future criminality, and violative of Beach's constitutional rights "of freedom of travel, speech, association, assembly and to the possession and enjoyment of her property." (*People* v. *Beach, supra,* 147 Cal.App.3d at pp. 621-623.)

A banishment condition was also held invalid in *In re White, supra.* There, a defendant found guilty of soliciting an act of prostitution was placed on probation on condition she not go into certain high-prostitution areas of the City of Fresno. Upon White's challenge to the validity of this condition, the court held that it was invalid. In addition to the tenuous factual nexus between the proscribed activity and future criminality, the court found the condition interfered with White's basic right to intrastate travel protected by our state and federal Constitutions. (97 Cal.App.3d at pp. 147-151.)

The banishment condition at issue here goes far beyond those considered in *Bauer, Beach,* and *White,* in that it effectively banished appellant from the country for a two-year period. Notwithstanding the good intentions of all the concerned parties in this case, the probation condition lacked any reasonable nexus to Babak's present or future criminality, violated his constitutional rights of travel, association, and assembly, and constituted a de facto deportation. In sum, we can perceive no reasonable basis for sustaining a condition requiring a minor to absent himself from the country of his residence.[3] (Cf. *People* v. *Bauer, supra,* 211 Cal.App.3d at pp. 943-945; *People* v. *Beach, supra,* 147 Cal.App.3d at pp. 621-623; *In re White, supra,* 97 Cal.App.3d at pp. 147-151; see also *People* v. *Blakeman* (1959) 170 Cal.App.2d 596, 597-598 [339 P.2d 202] [under a pre-*Lent* analysis court invalidated banishment condition on grounds of public policy and lack of statutory authorization]; *In re Mannino* (1971) 14 Cal.App.3d 953, 965 [92 Cal.Rptr. 880, 45 A.L.R.3d 996] [condition banishing defendant from college, high school, or junior high school campus stricken]; but cf. *People* v.

---

[3]Given the absence of any evidence in the record to the contrary, we assume for purposes of this appeal that Babak is a citizen or legal resident of the United States.

*Watkins* (1987) 193 Cal.App.3d 1686, 1688-1689 [239 Cal.Rptr. 255] [condition banishing defendant from his home held valid where crimes arose from ongoing feud with neighbors and where probation condition satisfied *Lent* criteria].)

The People alternatively argue that the court's finding should be upheld because the minor violated the probation order by "living with his parents without [the probation officer's] permission." This is so because the minor admittedly knew that his probation conditions would be in effect upon his return from Iran, and ". . . a necessary aspect of [Babak] living *anywhere* was that he do so with the prior approval of the probation officer."

■    Unfortunately, this argument fails to take into account constitutional and statutory requirements of adequate notice. Since the supplemental petition in this case did not allege the theory articulated by the People, the court's order may not be sustained on this basis.[4] (*In re Ronald E.* (1977) 19 Cal.3d 315, 326 [137 Cal.Rptr. 781, 562 P.2d 684]; *In re Arthur N.* (1976) 16 Cal.3d 226, 233 [127 Cal.Rptr. 641, 545 P.2d 1345]; *In re Alberto S.* (1991) 226 Cal.App.3d 1459, 1464-1466 [277 Cal.Rptr. 475]; *People* v. *Mosley* (1988) 198 Cal.App.3d 1167, 1172-1174 [244 Cal.Rptr. 264]; §§ 656, 776, 777.) Likewise, the juvenile court's apparent reliance upon the minor's failure to contact the probation officer upon his return from Iran is also improper for lack of adequate notice. (*Ibid.*)

Before proceeding to our analysis of the impact of the court's errors, however, we shall consider the sufficiency of the evidence supporting the allegation that Babak violated the terms of his probation by associating with a known probationer or gang member.

### B.    *The Condition Forbidding Association With a Probationer or Gang Member*

*The Continuing Validity of the Order*

As is indicated in our factual summary, the probationer/gang condition was first imposed after the court sustained a supplemental petition in June of 1991. The following month, in July of 1991, a petition was filed charging Babak with the commission of a new offense, possession of a dagger, and alleging that upon the sustaining of the petition, the court "[might] find the

---

[4]Even if there had been adequate notice, it is doubtful whether our state and federal Constitutions would permit a probation condition forbidding a minor who is a citizen or legal resident of this country from living in the United States unless he had first obtained the approval of his probation officer.

previous disposition has not been effective." The allegations were found to be true and Babak was continued on probation.

■  On appeal, Babak contends that the record does not contain sufficient evidence to establish that the probationer/gang condition was in effect at the time of the alleged violation. In so arguing, the minor relies on the minute order of the July 1991 disposition hearing.[5] On the minute order form, the court clerk checked a box indicating that "ALL PRIOR ORDERS [were] TO REMAIN IN FULL FORCE AND EFFECT." However, the checked box and text appear under a heading entitled "ORDERS RE: CONTINUANCE * OFF CALENDAR * VACATE HEARING." Though almost identical text appears under the heading of "PROBATION ORDERS,"[6] the court clerk did not check the box preceding this text; nor did the clerk check the box indicating that the minor was not "to associate with any known probationer, parolee, or gang member." Indeed, the only boxes checked under this heading are those reflecting the court's decision to return the minor to the custody of his parents and place him on formal probation. Based on this evidence, it appears that the juvenile court did not specify any probation conditions at the July 1991 disposition hearing and did not order all previous conditions to remain in effect. Thus, the minor argues that he was no longer subject to the probationer/gang condition. We disagree.

Babak's argument rests upon the assumption that the sustaining of a section 602/777 petition is analogous to revocation proceedings in adult court and thus results in a revocation of probation which terminates previously imposed probation conditions. It is therefore asserted that the juvenile court was required either to reimpose the probationer/gang condition or, alternatively, to decree that all previous orders were to remain in effect. (See, e.g., *People* v. *Pipitone* (1984) 152 Cal.App.3d 1112, 1117 [201 Cal.Rptr. 18]; *People* v. *Barkins* (1978) 81 Cal.App.3d 30, 32-33 [145 Cal.Rptr. 926] [probation conditions of an adult probationer are not terminated until probation is formally revoked].) The law is otherwise.

In *In re Arthur N., supra,* 16 Cal.3d 226, 236, our Supreme Court explained that "[t]he similarity between proceedings on probation revocation and those on supplemental petitions in juvenile cases is superficial. . . . Neither the purposes nor the consequences of these disparate proceedings are the same." Among other things, the court pointed out that while an adult probationer whose probation is revoked may not be subjected to any greater punishment than that permitted for the underlying offense, a ward of the

---

[5]The reporter's transcript of the hearing is not before the court.

[6]The text under "PROBATION ORDERS" reads: "All previous orders are to remain in full force and effect."

juvenile court "may be . . . subjected to increasingly severe and restrictive custody which exceeds that which would have been permissible initially, if he is later found on a supplemental petition to have committed additional acts of misconduct." (*Id.* at pp. 236-237.) More importantly for our purposes, it has also been recognized that ". . . juvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation. *A grant of juvenile probation is not revoked upon sustaining a supplemental petition*; rather, the entire underlying order is subject to modification 'as the judge deems meet and proper.' (§ 775.)" (*In re Antonio A.* (1990) 225 Cal.App.3d 700, 706 [275 Cal.Rptr. 482]; italics added; accord, 1 Hall, Cal. Juvenile Court Practice (Cont.Ed.Bar Supp. 1992) § 11.41, p. 197.) It is also significant that the juvenile court, when placing a child on probation, is required to "set reasonable terms and conditions of probation." (Cal. Rules of Court, rule 1493(b).)

Taking into account the rehabilitative goal of juvenile proceedings (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65]), the fact that probation is not revoked upon the sustaining of a supplemental petition, the requirement that a juvenile court set reasonable terms and conditions when placing a minor on probation, and the lack of any indication of an intent on the part of the juvenile court in this case to terminate any of the previously imposed probation conditions (see, e.g., *Freytes* v. *Superior Court* (1976) 60 Cal.App.3d 958, 962-963 [132 Cal.Rptr. 26] [where court specified six terms and conditions of probation upon restoring defendant to probation, reviewing court inferred that a previous search condition not among those listed by the trial court had been terminated]), we conclude that the record provides substantial evidence that the minor in this case remained subject to an order forbidding his association with known probationers or gang members.

### C. *Sufficiency of the Evidence*

■ Babak contends that even if he did remain subject to the probationer/gang order, the evidence adduced below was insufficient to establish a violation of the court's order. We do not find this contention to be meritorious.

■ "The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials. [Citation.]" (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275 [186 Cal.Rptr. 898].) In considering the sufficiency of the evidence in a juvenile proceeding, the appellate court "must review the whole record in the light most favorable to the judgment

below to determine whether it discloses substantial evidence—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence [citation] and we must make all reasonable inferences that support the finding of the juvenile court. [Citation.]" (*Ibid.*; accord, *People* v. *Johnson* (1980) 26 Cal.3d 557, 577-578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

Here, Carl Tademaru testified that he was currently Lonnie's probation officer and had supervised the youth on probation since 1991. Lonnie had not reported to Tademaru for the two or three months preceding his discovery at Babak's home (on July 14, 1992), but had surrendered to the authorities thereafter. Contrary to the minor's contention, this testimony sufficiently established Lonnie's status as a probationer on the date of the alleged probation violation.

On the question of Babak's knowledge of Lonnie's probationary status, the minor himself testified that Lonnie had indicated he did not know whether he was still on probation, but believed he had been released because he had attained the age of 18 years and his case had thus been "cleared."[7] Even if we take this testimony at face value, it established that the minor had discussed the issue with Lonnie, knew Lonnie had been on probation, and had received an equivocal answer, at best, as to the youth's current status. Based on this evidence, it could reasonably be inferred that Babak had associated with a known probationer. Accordingly, we conclude that the record contains evidence sufficient to support the court's finding that the minor had violated the probation condition forbidding his association with a known probationer.[8]

However, even though the record supports a violation of probation on this ground, we cannot sustain the court's finding that the previous dispositional order had been ineffective. In making its finding, the court explicitly relied upon the violation of the banishment condition and Babak's failure to contact his probation officer, factors which we have determined to be invalid. Though the court might have found the previous dispositional order ineffective based only upon the minor's violation of the probationer/gang condition, we cannot conclude on this record that the court would have imposed a Youth Authority commitment based solely upon Babak's association with Lonnie. (Cf. *People* v. *Self* (1991) 233 Cal.App.3d 414, 419 [284

---

[7]Pursuant to section 607, and subject to certain exceptions not here applicable, the juvenile court may retain jurisdiction over any person found to be a ward of the juvenile court until the ward attains the age of 21 years.

[8]In view of our determination, we need not address whether substantial evidence supports the court's implicit finding that Babak had also associated with a known gang member.

Cal.Rptr. 458] [revocation of probation may not be sustained where the revocation is premised in part upon a legally invalid theory].) Moreover, as indicated by our discussion below, the court's order suffers from an additional defect in that the decision committing the minor to the Youth Authority was premised in part upon an earlier order imposing a suspended commitment to the Youth Authority.

### D. *The Imposition of a Suspended Commitment to the Youth Authority*

At the February 1992 disposition hearing, the court indicated that it was imposing a suspended Youth Authority commitment. Later, at the August 1992 disposition hearing from which the present appeal arises, the court "lift[ed] the prior suspension" and committed Babak to the Youth Authority. ■ Citing *In re Ronnie P.* (1992) 10 Cal.App.4th 1079 [12 Cal.Rptr.2d 875], Babak contends the court erred by relying on a previous dispositional order purporting to impose a suspended Youth Authority commitment. We agree.

*In re Ronnie P., supra*, presents a factual situation analogous to that at issue in the present case. There, the juvenile court had previously imposed a suspended commitment to the Youth Authority under which the minor would be sent to that institution if he were to engage in any further misconduct. (*In re Ronnie P., supra*, 10 Cal.App.4th at p. 1086.) Upon the sustaining of a subsequent supplemental petition, the court "concluded that commitment to the Youth Authority necessarily followed . . . ." (*Id.* at pp. 1086-1087.)

On appeal, the reviewing court found a "complete absence of authority for an order imposing a 'suspended' or 'stayed' Youth Authority commitment." (*In re Ronnie P., supra*, 10 Cal.App.4th at p. 1087.) In so holding, the court explained that while there is statutory authorization for imposition of a brief detention in a county institution stayed pending the performance of other dispositional orders, there is no such authorization for Youth Authority commitments. The court reasoned that "[t]he expression of this narrow authorization implies the exclusion of any broader authority for 'stayed' dispositions, under the doctrine of '*expressio unius est exclusio alterius.*' [Citation.]" (*Ibid.*) The court also held that a juvenile court may not "forego a thorough review of dispositional considerations in favor of a previously 'stayed' Youth Authority commitment." (*Ibid.*) Where the court predetermines the outcome of a hearing without "a complete reassessment of dispositional issues in light of then-prevailing circumstances," it fails to exercise "a discretion conferred and compelled by law," thereby depriving the minor of a fair hearing and fundamental procedural rights. (*Id.* at pp. 1087-1091.)

We find the reasoning of *Ronnie P.* applicable in the instant case. While it is true the juvenile court gave some consideration to the inefficacy of the

minor's "prior commitments," the court's statement also demonstrates that its dispositional order was premised, at least in part, upon improper factors (i.e., the banishment condition and the unnoticed charge of failing to report to the probation officer) as well as an unauthorized sentence. As there is no statutory authority for a stayed or suspended commitment to the Youth Authority, the latter error is jurisdictional.[9] (Cf. *People* v. *Davis* (1981) 29 Cal.3d 814, 827 [176 Cal.Rptr. 521, 633 P.2d 186].) For the above stated reasons, we cannot uphold the dispositional order.

Our comments should not be read as expressing any opinion concerning the appropriate disposition on remand. We mean only to inform the trial court that its order must be based upon an independent review of the dispositional issues, including the efficacy of less restrictive dispositions, the safety and protection of the public, and the best interests of the minor. (Cf. *In re Ronnie P.*, *supra*, 10 Cal.App.4th at p. 1088.)

## IV. Disposition

The order is reversed and the matter remanded for further proceedings consistent with the views expressed herein.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied October 14, 1993, and appellant's petition for review by the Supreme Court was denied December 15, 1993.

---

[9]The court has observed that the standard commitment/placement forms contained in the record include a suspended Youth Authority commitment as a dispositional option. If they are still in use, the appropriate officials would be well advised to modify these forms so as to delete this particular option.