Filed 5/27/16  In re Alexander R. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ALEXANDER R., a Person Coming Under the Juvenile Court Law. | B266949 (Los Angeles County Super. Ct. No. VJ43362) |
| THE PEOPLE, Plaintiff and Respondent, v. ALEXANDER R., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kevin L. Brown, Judge.  Affirmed.

Holly Jackson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Alexander R., a 16-year-old ward of the court, challenges the juvenile court's order revoking his home probation and ordering him to placement in a camp. Appellant contends that there was no substantial evidence to support the finding of a probation violation, and that the juvenile court abused its discretion by not selecting a disposition that would allow him to remain in his home. We disagree and affirm the judgment of the juvenile court.

## FACTS AND PROCEEDINGS BELOW

In 2013, the juvenile court adjudged Alexander, age 14, a ward of the court pursuant to Welfare and Institutions Code section 602, subdivision (a)[1] and placed him on home probation. Alexander lived with his mother. His father is deceased. Two of the terms of his probation were to obey all laws and orders of his probation officer, and to maintain satisfactory grades, attendance, and citizenship at school.

On May 14, 2015, when Alexander was 15, the district attorney filed a notice of probation violation pursuant to section 777 alleging that Alexander had violated the terms of his probation. The notice alleged (count 1) that Alexander had failed to meet with his probation officer, (count 2) that he had frequently been absent from or tardy at school, and (count 3) that he disobeyed or was disrespectful to school officials. On June 18, 2015, Alexander's probation officer filed an additional notice of probation violation under section 777, alleging that Alexander had missed another appointment with his probation officer and had failed to come to school to take required exams. On September 2, 2015, Alexander's probation officer filed a third notice of violation under section 777, alleging that Alexander had missed meetings at his new school, had refused to attend school, and had made insufficient progress toward graduation.

At Alexander's probation revocation hearing on September 2, 2015, Alexander's probation officer was the sole witness. She testified that Alexander and his mother failed to attend a meeting with her on April 27, 2015, and another on June 11. The probation

---

[1] Unless otherwise specified, subsequent statutory references are to the Welfare and Institutions Code.

officer also described a history of difficulty for Alexander in attending and making progress in school. He had attended six schools within the previous 14 months, had consistent attendance problems, and although he was old enough to be beginning 11th grade, he had completed less than one semester's worth of high school credits. During the spring of 2015, Alexander had been enrolled in independent study classes in lieu of an ordinary high school schedule. Alexander's instructor in the independent study wrote the probation officer a letter stating that Alexander had missed at least one-fourth of his class sessions and arrived late to many sessions that he did attend.

The probation officer recommended that the court revoke Alexander's probation and place him in a facility with a school on site where he would have male role models. The probation officer acknowledged that she had not attempted alternative programs with Alexander that would allow him to remain in his home. For example, Alexander would be eligible for a program known as M.S.T., in which a therapist comes to a juvenile's home on a regular basis to help set rules and boundaries, or other services called F.S.P. and Wrap-Around, which involve multiple in-home visits per week and separate therapists and case workers assigned to the juvenile and his parents. The probation officer believed that these programs would not be sufficient for Alexander because he struggles with basic responsibilities like getting up and going to school on time. He needed the constant presence of male mentors over the space of 30-60 days to inculcate new habits.

The juvenile court found true the first two counts in the first notice of violation, finding that Alexander failed to attend the April 27 appointment and consistently missed school. The court dismissed the third count, along with all counts in the second notice of violation, filed June 18, 2015. The probation officer withdrew the third notice of violation, which she had filed the same day as the hearing. On the basis of the probation officer's testimony, along with information from the probation reports, the court found that home-based programs would be insufficient. Accordingly, the court terminated the previous order of home probation, finding that Alexander had failed to reform. The court removed Alexander from the custody of his mother and committed him to the probation

3

department for suitable placement.  He was placed in a camp-community placement program for a recommended term of five to seven months.

## DISCUSSION

Alexander contends that there was insufficient evidence to support the court's finding of a violation, and that the court abused its discretion by ordering his placement outside the home.  We review the juvenile court's factual findings for substantial evidence, and its disposition order for abuse of discretion.  (*In re Khamphouy S.* (1993) 12 Cal.App.4th 1130, 1134-1135.)

At a juvenile probation revocation hearing, the People bear the burden to establish the facts of the violation by a preponderance of the evidence.  (§ 777, subd. (c).) "In considering the sufficiency of the evidence in a juvenile proceeding, the appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence.' "  (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088-1089.)  Under a substantial evidence standard, we review only whether "there is substantial evidence of solid value, contradicted or uncontradicted, which will support the [juvenile] court's decision.  In that regard, we give great deference to the [juvenile] court and resolve all inferences and intendments in favor of the judgment.  Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849, fns. omitted.)

Here, substantial evidence supported both of the allegations that the juvenile court found true.  The probation officer testified that she notified Alexander of the meeting with him both by certified mail and by telephone call with Alexander's mother.  She also testified that neither Alexander nor his mother attended the meeting.  From this, a reasonable trier of fact could conclude that the first count of the notice of probation violation was true, and that Alexander had violated his probation by failing to appear at the meeting.

Further, the probation officer testified that she had accessed Alexander's school attendance records and emails and letters from Alexander's independent studies instructor.  In a letter, the instructor stated that Alexander had missed between one-fourth

4

and one-third of his independent study meetings, and that when he did attend, he was often late. This was sufficient evidence for the juvenile court to conclude that the second count of the notice of probation violation was true, and that Alexander had violated his probation by failing to attend school and by having excessive tardies.

Alexander contends that the juvenile court abused its discretion by revoking Alexander's probation and ordering him to placement in a camp. He notes that he was not accused of any criminal violations, and argues that the juvenile court's "disposition was inconsistent with the rehabilitative goals of the juvenile justice system." We disagree.

"Under section 202, juvenile proceedings are primarily 'rehabilitative' (*id.,* subd. (b)), and punishment in the form of 'retribution' is disallowed (*id.,* subd. (e)). Within these bounds, the court has broad discretion to choose probation and/or various forms of custodial confinement in order to hold juveniles accountable for their behavior, and to protect the public. (*Id.,* subd. (e).) . . . Given these aims, and absent any contrary provision, juvenile placements need not follow any particular order under section 602 and section 777, including from the least to the most restrictive. [Citations.] Nor does the court necessarily abuse its discretion by ordering the most restrictive placement before other options have been tried." (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.) "The statutory scheme governing juvenile delinquency is designed to give the [juvenile] court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 411.) It is not the function of this court, in reviewing the juvenile court, "to determine what we believe would be the most appropriate placement for a minor." (*In re Khamphouy S.*, *supra*, 12 Cal.App.4th at p. 1135.)

The lack of criminal conduct by Alexander does not show that placement is inappropriate. Indeed, section 777 specifically provides for the removal of minors from the custody of their parents as a consequence of probation violations where "the notice alleges a violation of a condition of probation not amounting to a crime." (*Id.*, subd. (a)(2).) The juvenile court noted that Alexander had engaged in a pattern of

5

misbehavior, a conclusion supported in the record.  On the basis of Alexander's frequent instances of missed meetings and missed school, and the probation officer's conclusion that less restrictive options would be ineffective, the court acted within its discretion by revoking Alexander's home probation and assigning him to placement at a camp.

**DISPOSITION**

The judgment of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED.</u>


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.


6