[No. G037152. Fourth Dist., Div. Three. Sept. 25, 2006.]

ABBAS ALHUSAINY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Lorraine Anderson for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, Jane L. Shade and Dennis Conway, Deputy District Attorneys, for Real Party in Interest.

OPINION

**RYLAARSDAM, J.**—Petitioner Abbas Alhusainy seeks an order allowing him to withdraw his guilty plea on the basis that he was not told of its direct consequences, specifically that the condition he remove himself from the state was unconstitutional. In addition, he claims the trial judge erred in striking his motion to disqualify her under Code of Civil Procedure section 170.1. He also requests withdrawal of an order he be held without bail.

■ As to the latter, we deny the petition for failure to brief the issue. However, withdrawal of the guilty plea is warranted: The condition requiring petitioner to leave the state was constitutionally improper, and the plea required him to commit another felony, i.e., flee the jurisdiction to avoid sentencing. Finally, although the motion to disqualify the trial judge was untimely, pursuant to Code of Civil Procedure section 170.1, subdivision (c), we direct that on remand the case be heard by another trial judge if petitioner so requests.

## FACTS

In February 2002 petitioner was charged with four counts of domestic violence, including making a criminal threat (Pen. Code, § 422), felony child abuse (Pen. Code, § 273a, subd. (a)), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). Police reports leading to his arrest stated that during a family argument, petitioner grabbed his 16-year-old daughter by the hair and hit her. When the rest of the family was interviewed, they reported past acts of physical abuse and violence by petitioner. Almost a year earlier, petitioner's wife had obtained an emergency protective order after a domestic violence incident for which petitioner was arrested.

In the current instance, petitioner's wife reported he had threatened to kill her and their four children if she divorced him. He also threatened to kill his wife's aunt, whom he strongly disliked, for interfering in family matters. The aunt reported petitioner had psychiatric problems, had been prescribed medication, and was in counseling. Petitioner denied hitting his daughter or threatening his wife.

Petitioner subsequently entered into a plea bargain on the following conditions: He would plead guilty to one count of making a criminal threat and one count of felony child abuse, which had a maximum sentence of six years, eight months; the other two counts would be dismissed. Sentencing

would be postponed and petitioner would be released on his own recognizance on condition he leave and remain outside of California. The court did give petitioner the option to appear for sentencing but made it clear he could avoid imposition of sentence if he did not. The court stated, "It's our expectation that you will not be here based on the agreement that you have with the court." To assure that petitioner would not return, all parties and the court agreed that, when petitioner failed to appear for sentencing, the bench warrant issued would specify that it could only be served in California. The court also issued a protective order to be in effect for 10 years.

Sentencing was continued to May 1, 2002, and, in accordance with the plea agreement, petitioner failed to appear. The court issued a bench warrant, setting bail at $100,000. Sentencing was then continued from year to year through 2005.

In violation of the agreement, petitioner returned to California in February 2006, at which time he was arrested pursuant to the bench warrant and returned to the court for sentencing.

Shortly after his arrest, petitioner, through his new lawyer, filed a motion to withdraw his guilty plea, relying on several claims: unlawful banishment as a condition of probation; ineffective assistance of counsel based on having six interpreters and eight public defenders during all of his court hearings; and counsel's failure to advise him of the direct consequences of his plea. At the hearing, petitioner and the public defender who negotiated and secured the plea both testified. The court denied the motion finding that, contrary to his claim, petitioner understood the consequences of his plea.

Petitioner then filed a motion to disqualify the trial judge under Code of Civil Procedure section 170.1 for actual bias, relying again on the unconstitutionality of banishment and also on a claimed illegality of the delay in sentencing. In her declaration in support of the motion, counsel stated that when she substituted into the case on May 4, she advised the court that petitioner had not committed any violence in the past four years, petitioner's family had lived with him for several months during that time, two of his children were adults, and the family wanted contact. According to counsel, the judge "was adamant that the sentence would be four years in state prison." (We take judicial notice of pages 6 and 7 of the motion to disqualify the trial judge contained in the superior court file but not included within the exhibits.)

Counsel suggested monitored visits. In response the judge stated, "I'm not monitoring him." Counsel further declared that in another conference a few days later when the district attorney offered a sentence of time served, 180 days, the court rejected it, stating, "I don't trust him. . . . He's a liar and will say anything to get his way. . . . He is a guy you read about in the paper . . . ." The judge struck the motion to disqualify her as untimely.

## DISCUSSION

### 1. *Banishment and Delay in Sentencing*

Petitioner contends that the part of the plea bargain that he leave California constituted banishment in violation of his constitutional rights. We agree it was not a permissible condition, invalidating the plea. In the petition, petitioner also complains about the delay in sentencing from year to year but concedes in the reply that delay is not really the argument; "the real issue is whether or not the court's delay in sentencing is actually an illegal banishment." Thus we do not separately discuss the delay claim.

Petitioner cites no cases, and we found none, dealing with banishment in the context of a plea agreement without the imposition of sentence. Most were decided in connection with probation violations. *In re Babak S.* (1993) 18 Cal.App.4th 1077 [22 Cal.Rptr.2d 893] is instructive. There, at the request of the parents, a term of probation was that the minor live with them in Iran for two years. The probation department recommended suspension of commitment to the youth authority on this condition and that the minor not return to the country without its approval. When the minor did come back within two years and violated another term of probation, the court committed him to the youth authority.

In finding the banishment invalid, the court discussed probation in general. Citing *People v. Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545], it acknowledged that " 'a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.]" (*In re Babak S., supra,* 18 Cal.App.4th at p. 1084.) The court noted that conditions that impinge on constitutional rights, such as travel, assembly, and association, are valid as long as "they are

narrowly drawn to serve the important interests of public safety and rehabilitation [citation] and if they are specifically tailored to the individual probationer. [Citations.]" (*Ibid.*) But the banishment condition failed because it "lacked any reasonable nexus to [the minor's] present or future criminality, violated his constitutional rights of travel, association, and assembly, and constituted a de facto deportation." (*Id.* at p. 1085.)

The district attorney here agrees that banishment as a condition of probation is unconstitutional where it is not related to the crime or to rehabilitation, but argues petitioner was neither sentenced nor put on probation. However, the district attorney does not satisfactorily explain why this should make a difference in our decision.

■ The district attorney also contends petitioner knew the terms and consequences of his plea, sought and consented to it, and benefited from it, avoiding deportation to Iraq and possible torture or death and reintegrating into society. We do not disagree with these facts. But that petitioner sought this condition or benefited from it is not determinative. The move-away condition was requested in *Babak S.* but that did not persuade the court it was permissible, "[n]otwithstanding the good intentions of all the concerned parties . . . ." (*In re Babak S., supra,* 18 Cal.App.4th at p. 1085.) Petitioner's acquiescence in an improper plea agreement cannot render it valid.

The record also reflects that, in allowing this plea, the court was concerned with keeping petitioner away from his victims. But the move out of state cannot be characterized as narrowly drawn to accomplish that goal. (*In re Babak S., supra,* 18 Cal.App.4th at p. 1084.) A stay-away order prohibiting petitioner from coming within a safe but limited distance from his family would have effected the protection. Cases with much more tailored restrictions on travel have held even those conditions improper because they were too broad and not reasonably related to the crime or rehabilitation. (E.g., *People v. Bauer* (1989) 211 Cal.App.3d 937, 944 [260 Cal.Rptr. 62] [adult defendant convicted of false imprisonment and assault who lived with parents; residence required to be approved by probation officer]; *People v. Beach* (1983) 147 Cal.App.3d 612, 621–623 [195 Cal.Rptr. 381] [defendant convicted of involuntary manslaughter required to relocate from community where she had lived more than 20 years]; *In re White* (1979) 97 Cal.App.3d 141, 147–151 [158 Cal.Rptr. 562] [defendant convicted of soliciting prostitution prohibited from entering designated area of city with high rate of prostitution].) The breadth of the condition that petitioner move out of state defeats it.

Moreover, there appears to be no time set as to when, if ever, petitioner would be allowed to return to California without the threat of a sentence hanging over him. The court issued a protective order with a 10-year term. However nothing in the record shows whether this was to be the duration of petitioner's exile from the state. Thus the plea raised many unanswered questions. Was petitioner free to return, condition free, upon expiration of the protective order? Would the bench warrant ever be withdrawn? Or would petitioner still be subject to sentencing after 10 years? Had a sentence actually been imposed, it would have had a fixed duration and then have concluded. Under the terms of the plea, however, the banishment appeared to be for an unlimited period. Therefore, even had the plea otherwise been permissible, the uncertainty as to the length of the banishment rendered it invalid.

█ Further, banishment out of state, as opposed to exile from areas within it, has interstate policy implications. Citizens of California would not be amenable to having convicted felons from other states sent here as part of a plea agreement, and cases from other states reflect our felons are not welcomed elsewhere.

In *State v. Charlton* (Ct.App. 1992) 115 N.M. 35 [846 P.2d 341], the defendant was required to leave the state once his prison sentence was completed. In finding this contrary to public policy, the court stated, "Banishment 'would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political rights among the several states which is the basis of the Union itself.' [Citation.] 'To permit one state to dump its convict criminals into another is not in the interests of safety and welfare; therefore, the punishment by banishment to another state is prohibited by public policy'. [Citation.]" (*Id.* at p. 344, citing cases from South Carolina, Florida, Mississippi, Texas, Minnesota, and Michigan and the federal district court in Virginia; accord, *Crabtree v. State* (2005) 2005 WY 62 [112 P.3d 618, 622]; *People v. Green* (N.Y.Sup.Ct. 1982) 114 Misc.2d 339, 342 [451 N.Y.S.2d 970].) Similarly, *Commonwealth v. Pike* (1998) 428 Mass. 393 [701 N.E.2d 951] pronounced that "[i]t is against constitutional principles of interstate comity to 'make other states a dumping ground for our criminals,' [citation], [as it is] our solid waste. [Citation.]" (*Id.* at p. 960.) The practical reason for this policy is well illustrated by *Krack v. State* (Alaska Ct.App. 1999) 973 P.2d 100, where the defendant was convicted of five counts of sexual abuse of a minor and two illegal drug use counts. In discussing prior conduct, the court noted the defendant had "accepted banishment from New Mexico to escape prosecution for his acts of sexual abuse in that state." (*Id.* at p. 105.)

The requirement petitioner leave the state was invalid, not only because it was not narrowly tailored or reasonably related to his crimes, but also because public policy precludes banishment of felons from the state.

### 2. *Commission of Additional Crime*

An essential term of the plea agreement was that, as long as petitioner stayed outside California, he would not be sentenced. Yet a sentencing hearing was to be set, and, as part of the plea agreement, when petitioner did not appear the court would order a bench warrant issued. This made petitioner a felon fleeing the jurisdiction to avoid sentencing.

■ Penal Code section 1320, subdivision (b) provides that one convicted of a felony who is released on his own recognizance, and "who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony . . . ." Thus, the effect of the plea was to require petitioner to commit another felony.

■ It should not be necessary to state that the obligation of a judge is to uphold the law, not to facilitate or sanction the commission of another crime in disposing of a charged crime. In exercising its authority, the court cannot lose sight of its duty to follow the law and maintain the integrity of the judicial system. The plea in this case directly contravened these principles.

### 3. *Motion to Withdraw Guilty Plea*

■ Petitioner seeks an order directing that he be allowed to withdraw his guilty plea. Generally a ruling on a motion to withdraw a guilty plea is left to the sound discretion of the court. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 [69 Cal.Rptr.2d 784, 947 P.2d 1321].) In this instance, however, because the plea was void from its inception, there was no discretion for the court to exercise. "Whether to grant or deny a defendant permission to withdraw a plea of guilty must be decided 'in the interest of promoting justice.' [Citation.]" (*People v. Williams* (1998) 17 Cal.4th 148, 164, fn. 7 [69 Cal.Rptr.2d 917, 948 P.2d 429].) Here the void plea requires that it be set aside.

### 4. *Disqualification of Trial Judge*

Petitioner moved to disqualify the trial judge pursuant to Code of Civil Procedure section 170.1 based on two grounds: (1) the illegality of the

banishment and the delay in sentencing; and (2) the alleged bias of the judge based on the sentence she has stated she will impose. Upon receiving the motion the court struck it as untimely.

■ When a party seeks to disqualify a judge based on actual bias, the application "shall be presented at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." (Code Civ. Proc., § 170.3, subd. (c)(1).) Here, petitioner knew all of the facts on which he relies by the time he filed his motion to withdraw the guilty plea on May 9, 2006. However, it was not until after he lost that motion, at a hearing on May 25, that he filed his application to disqualify the judge. That does not comport with the statutory requirement of acting at the earliest practicable opportunity. (*People v. Scott* (1997) 15 Cal.4th 1188, 1207 [65 Cal.Rptr.2d 240, 939 P.2d 354] [motion not timely; " ' "[i]t would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not" ' "]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 656 [49 Cal.Rptr.2d 620] [requirement of filing at first practicable opportunity " 'rests on the principle that a party may not gamble on a favorable decision' "], disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The court did not err in striking the motion as untimely.

■ Pursuant to Code of Civil Procedure section 170.1, subdivision (c), however, on our own motion, "in the interests of justice [we may] direct that further proceedings be heard before a trial judge other than the judge whose . . . order" is before us. Grounds for our exercise of this power include "where a reasonable person might doubt whether the trial judge was impartial [citation], or where the court's rulings suggest the 'whimsical disregard' of a statutory scheme. [Citation.]" (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 303 [4 Cal.Rptr.3d 883].) Although our power to direct another judge to hear a matter is not to be lightly exercised (*ibid.*), the totality of circumstances dictate it here.

First, the invalidity of the plea itself is a factor. It was the court's responsibility to ensure that the plea was valid, and if not, to refuse to allow it, despite agreement among the petitioner, his lawyer, and the district attorney to its terms. (See *People v. Andreotti* (2001) 91 Cal.App.4th 1263, 1275 [111 Cal.Rptr.2d 462] [where deferral of entry of judgment in molestation case requires agreement between prosecution and defendant, "[t]he trial

court does not rubberstamp any agreement submitted by the parties, but protects the public by ensuring the interests of justice are served by the agreement"].) As it was, the court participated in facilitating the void plea and the commission of a new crime.

Second, there is a question as to whether the judge's indicated sentence of four years demonstrates " 'an animus [toward petitioner] inconsistent with judicial objectivity.' " (*Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1256–1257 [135 Cal.Rptr.2d 639, 70 P.3d 1054].) The probation report recommended jail "for an appropriate period of time" followed by an anger management program, and a combination of psychiatric, drug, alcohol, child abuse, and counseling programs as recommended by the probation department. According to the trial court declaration of petitioner's lawyer, the district attorney offered time served, 180 days. In addition, there was no evidence petitioner had committed any further violence after his guilty plea. His two oldest children are adults; one of them filed a declaration stating he and his siblings wanted petitioner to be free to see them. Petitioner's wife stated her children wanted to see him. She also declared he has changed for the better, she no longer fears him, and he is not contesting her requested divorce.

Additionally, although petitioner's criminal acts were serious, not minor as he characterizes them, it is at least questionable whether his conduct warrants four years in prison. This is especially true given the fact he has been out of state for four years.

In light of all of these considerations, the interests of justice necessitate that, if petitioner makes such a request, another trial judge hear further proceedings.

## 5. *Bail*

In the prayer, petitioner asks that the trial court be ordered "to withdraw the 'no bail' order . . . ," but the issue is not briefed. In response to the district attorney's argument that petitioner cannot prevail because he failed to challenge the order in the trial court, petitioner maintains he did make such a request. However, he does not point to anything in the record to substantiate this assertion. Based on the failure to brief the issue and to cite to the record, we treat the claim as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; Cal. Rules of Court, rules 14(a)(1)(B) & (C), 33.)

## DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order denying the motion to withdraw the plea and to enter a new order granting the motion. The order denying bail is affirmed without prejudice to petitioner renewing his motion in the trial court. The order striking the motion to disqualify the judge is affirmed. However, on remand, at petitioner's request, the Presiding Judge of the Orange County Superior Court shall assign this case to another judge.

Sills, P. J., and Ikola, J., concurred.