Filed 6/10/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | A157529 |
| v. | |
| DEVONNE LAVERT RICHARDSON, | (San Mateo County Super. Ct. No. 18SF009740A) |
|     Defendant and Appellant. | |

**INTRODUCTION**

Plea bargaining is essential to the efficient and fair operation of the justice system. Plea bargains provide a method of disposing of criminal prosecutions through guilty or no contest pleas by a defendant in return for a reciprocal benefit, generally consisting of less punishment than if he or she were convicted of all the charged offenses. Despite its inherent flexibility, the plea bargaining process does not give unfettered discretion to the prosecution and the trial court. The law requires that any negotiated plea must have a factual basis. However, in this case the negotiated plea was no more valid than a no contest plea to murder where the victim is still alive.

Defendant Devonne Lavert Richardson pleaded no contest to one count of human trafficking of *a minor* for a sex act (Pen. Code, § 236.1, subd. (c)(1)),[1] but the victim was 26 years old. In exchange for the plea, the

---

[1] All further undesignated statutory references are to the Penal Code.

1

remaining felony charges were dismissed. The trial court denied defendant's request for probation and imposed a five-year state prison term allowed under the plea agreement.

Defendant filed a timely notice of appeal challenging his sentence and the validity of his plea. Defendant requested a certificate of probable cause based on "the sentence he received in the case." Defendant did not obtain a certificate of probable cause.

After defendant's court-appointed counsel filed a brief raising no issues and seeking review pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*),[2] we requested briefing on whether defendant's failure to obtain a certificate of probable cause precluded defendant's appeal and whether the trial court acted in excess of its jurisdiction when it approved a plea bargain for human trafficking of a minor for a sex act (§ 236.1, subd. (c)(1)) because it was undisputed that the victim was an adult. We reverse.

## BACKGROUND

### A. *Facts*[3]

On August 18, 2018, the Redwood City Police Department responded to a call from a concerned citizen about a fight between a man and a woman in a parking lot. The responding officer spoke to the female (identified in the record as "Confidential Victim" or "CV"), who denied any altercation with the male (later identified as defendant). The officer did not notice any visible signs of injury, and CV denied any injury and refused medical attention.

---

[2] Defendant was informed of his right to file a supplemental brief and did not do so.

[3] The facts are taken from defendant's preliminary hearing and presentence report.

Because CV had no safe place to go, she agreed to be taken to First Chance in Burlingame.

The next morning, CV told a counselor at First Chance that she had fled from defendant, who was her pimp and was driving her to a " 'date.' " When CV told defendant that she would not go through with the date, defendant grabbed her by the neck and threw her to the ground. When he noticed that people were watching, defendant drove off with CV's purse and cell phone. Based on this report, the police were called and CV provided a statement.

CV first met defendant at an Airbnb in Stockton on August 1, 2018. At the time, CV was 26 years old. Defendant promised her that if she left with him he would take care of her financially and they would eventually find a place to stay. She left the Airbnb with defendant and they drove to Sacramento.

Once in Sacramento, defendant and CV had sex in defendant's car. Defendant told CV that she now belonged to him. He told CV that she "had to walk the blade," which meant to walk in an area of the city where "johns" (men looking for sex workers)[4] would go to hire sex workers. She would need to work as a sex worker to make money, and in return defendant would provide a place to stay, food, transportation, and protection.

Defendant also told CV that she would have to take nude photographs of herself for defendant to post online. CV told defendant that she did not want to take such photographs because she was afraid that her parents or someone she knew would see them, but defendant told her that in order for

---

[4] Throughout this opinion we refer to "sex workers" and "sex work" in lieu of prostitutes and prostitution, except where the statutory language provides otherwise.

3

her to eat, she would need to take the photographs. She complied. Although CV did not want to engage in sex work for defendant, she did so because she was addicted to methamphetamine and needed a way to support her addiction. Defendant also had her cell phone, her personal identification, and the naked pictures; she feared he would send the pictures to all her phone contacts, including her parents.

CV related that she had five or six transactions with men she met while walking the blade in Sacramento. In each case, defendant, who drove CV to the area, kept all the money. CV was instructed never to identify him to any authority figure as her pimp.

After about a week in Sacramento, CV left defendant and did not return to him after walking the blade. However, CV continued working as a sex worker and walking the blade on her own until defendant found her a week later. CV agreed to go back to defendant because he apologized to her and told her he would not "make her do things" any longer and her life would be better. She also went back because defendant still had her cell phone and the naked pictures.

On August 17, 2018, defendant and CV traveled to San Francisco, where defendant again wanted CV to walk the blade. On the morning of August 18, 2018, defendant told CV that they had an "outcall" (a date) in Redwood City. Defendant drove CV to a street corner in Redwood City and told her to wait for the customer. CV waited, but the customer did not arrive so she returned to defendant's car. Defendant would not let her back in the car and told her to return to the corner. CV reached into the car and grabbed her purse. Defendant got out of the car and grabbed CV by the neck, hitting her with her purse and throwing her to the ground, where he began kicking her in the face and head. When defendant noticed that bystanders were

4

watching, he stopped the assault and drove off, still in possession of CV's purse.

Eventually, defendant was arrested on August 23, 2018.

## B. *Charges, Plea, and Sentencing*

On November 16, 2018, defendant was charged by information with seven felonies, to wit: human trafficking (§ 236.1, subd. (b) [count 1]); second degree robbery (§ 212.5, subd. (c) [count 2]); living and deriving support and maintenance from the earnings of a person known to defendant to be a prostitute (§ 266H, subd. (a) [counts 3 & 5]); unlawfully and by threats of violence persuading and encouraging another person to become a prostitute (§ 266I, subd. (a)(2) [counts 4 & 6]); and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4) [count 7]). On November 20, 2018, defendant pleaded not guilty to all charges.

Although it was understood that the victim (born in October 1991) was an adult at the time of the charged crimes, an amended information was filed on March 1, 2019, adding count 8, which alleged *human trafficking of a minor for a sex act* (§ 236.1, subd. (c)(1)). Pursuant to a negotiated disposition entered on the same date, defendant pleaded no contest to count 8 of the amended information. In exchange for the plea, all other charges were dismissed and the maximum state prison term to be imposed was five years.

At the change of plea hearing, the trial court confirmed that defendant understood the nature of the charge against him, as well as the rights he was waiving by pleading no contest. With respect to the factual basis, the court asked whether defense counsel would "stipulate to a factual basis[.]" Defense counsel replied, "I do based on speaking with my client." Accepting the plea, the court stated, "Mr. Richardson has made a free, knowing, voluntary, and intelligent waiver of his rights. Based upon that his [*sic*] plea and the factual

5

basis, I will find you guilty of the charge in Count 8 [human trafficking of a minor for sex] . . . ."

In the sentencing memorandum, the district attorney explained, "Despite the Defendant's lack of a significant criminal record, the People do believe that this is a prison case. The People conceded that the acts in this case did not merit 8 years in prison and thus purposefully offered Defendant a count that reduced his minimum exposure from 8 years to 5."[5]

At the sentencing hearing, the district attorney read a letter from CV detailing the " 'fear, violence, manipulation, and degradation [defendant] put [her] through.' " CV urged the court to give defendant the " 'maximum possible sentence.' " CV's mother also testified about the pain and anguish of not knowing CV's whereabouts. CV's mother explained that, besides her daughter's physical wounds, CV struggled with "PTSD, depression, and anxiety." Defense counsel argued that defendant was a good candidate for probation given the facts that he had no prior convictions, was 29 years old, and had been gainfully employed in the past. The court also heard from defendant, who told the court that he should have known better, he was disappointed in himself, and he was "sorry for what [CV] . . . went through."

At the close of the testimony, the court stated that "the seriousness of the offense is so extreme and the victim impact [is] so extreme that the Court can't really justify probation based on the criteria" it was required to consider. When the court stated that it was a significant factor that "the victim was under 18" years old, the district attorney immediately clarified,

---

[5] We observe human trafficking of a minor for sex carries lighter penalties (§ 236.1, subd. (c)(1) [5, 8, or 12 years]) than human trafficking of an adult for sex (§ 236.1, subd. (b) [8, 14, or 20 years]). The policy merits of this sentencing structure are questions for the Legislature that are beyond the scope of this appeal.

"No, she wasn't, your Honor." The district attorney explained the victim was "27" years old[6] and the plea had been offered "in order to reduce the count from [the] eight-year minimum triad." Following the clarification of CV's age, the court determined that probation was inappropriate "given the seriousness of the offense and the impact on the victim."

## DISCUSSION

### A. *Scope of Appellate Review and Decision to Treat Appeal as a Petition For Habeas Corpus*

Before beginning, we need to address the proverbial elephant in the room: The no contest plea to human trafficking of a *minor* was without a factual basis because the victim was a 26-year-old adult woman. The Attorney General concedes that the victim was an adult at the time of the charged offenses, but argues that the plea is not subject to appellate review because defendant failed to procure a certificate of probable cause and, in any event, defendant is estopped from challenging the validity of the plea. Defendant does not assert otherwise and appears to limit his challenge on appeal to the five-year state prison sentence he received. As we explain, we are not bound by the positions of the parties.

Ordinarily, "[i]n our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. . . . [A]s a general rule, '[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.' " (*Greenlaw*

---

[6] CV was 26 years old at the time of charged offenses and was 27 years old at the time of sentencing.

*v. United States* (2008) 554 U.S. 237, 243–244, 1st & 2d bracketed insertions added.) In this regard, courts are loath to address issues that have not been raised by the parties. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 426–427; *People v. Fuiava* (2012) 53 Cal.4th 622, 727; *People v. McKinnon* (2011) 52 Cal.4th 610, 640–642 & fn. 20; *People v. Redd* (2010) 48 Cal.4th 691, 730–731 & fn. 19; *People v. Dykes* (2009) 46 Cal.4th 731, 757; *People v. Benavides* (2005) 35 Cal.4th 69, 115.)

Nevertheless, in criminal appeals, there is a notable exception to these established tenets when a *Wende* or "no issue" brief has been filed. Following the filing of a *Wende* brief, an appellate court is required to independently review the record for error. (*Wende, supra*, 25 Cal.3d at pp. 441–442.) In this context, the reviewing court must don two hats—the one as a neutral arbiter, the other as an advocate looking for reversible error.[7]

Thus, as an appellate court tasked with *Wende* review, we cannot turn a blind eye to apparent errors discovered during our independent review of the record. To be clear, this is not a case of clerical error or mistake of fact regarding the victim's age. It is, instead, a case of legal impossibility:

---

[7] To be sure, *Wende* is not without its critics. (See, e.g., *Wende, supra*, 25 Cal.3d at pp. 443–444 (conc. & dis. opn. of Clark, J.); *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 543; *People v. Hackett* (1995) 36 Cal.App.4th 1297, 1303–1305; *People v. Johnson* (1981) 123 Cal.App.3d 106, 111; *People v. Von Staich* (1980) 101 Cal.App.3d 172, 173–175; see also Kelso, *A Report on the California Appellate System* (1994) 45 Hastings L.J. 433, 460–463.) Nevertheless, *Wende* remains good law and we are bound to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *Smith v. Robbins* (2000) 528 U.S. 259, 278–279 [upholding constitutionality of *Wende* procedures].)

Defendant could not have been guilty of trafficking a minor because the victim indisputably was 26 years old.[8]

Nevertheless, " '[a]fter [a no contest] plea the only issues which may be considered on appeal are those based upon constitutional, jurisdictional, or other grounds going to the legality of the proceedings and those only when the statutory requisites of . . . section 1237.5 are fulfilled.' [Citation.] However, in rare cases, because of the jurisdictional challenge involved and the inherent incurable defect in the prosecution, an appellate court may appropriately treat a barred appeal as a petition for writ of habeas corpus. [Citations.]" (*People v. Jerome* (1984) 160 Cal.App.3d 1087, 1094–1095 (*Jerome*).)

For example, in *Jerome, supra*, 160 Cal.App.3d at pages 1093–1095, notwithstanding the failure to procure a certificate of probable cause, the court treated the appeal as a habeas corpus petition where the defendant argued his guilty plea to oral copulation with a person under 14 years of age was fatally defective because the complaint expressly alleged the victim was 15 years old.  The court held, "Since it was legally impossible to commit the charged crime against the overaged victim, the trial court acted in excess of its jurisdiction when it imposed sentence for that crime." (*Id.* at p. 1094.) Similarly, in *People v. Ellis* (1987) 195 Cal.App.3d 334, 338 (*Ellis*), the court reached the merits of a claim where the trial court acted in excess of its jurisdiction when it imposed a serious felony enhancement.  Treating the appeal as a petition for writ of habeas corpus, the *Ellis* court held, "A defendant cannot lawfully admit in the trial court that a felony committed in another jurisdiction includes all of the elements of a California serious felony

---

[8] California defines a "minor" as a person not of the age of majority, which is 18 years old.  (Fam. Code, § 6500.)

9

when, as a matter of law, it does not." (*Id.* at p. 339, italics omitted.) Citing *Jerome*, the court concluded that imposition of a prior serious felony enhancement (§ 667, subd. (a)) was an unlawful act in excess of the trial court's jurisdiction. (*Ellis*, at p. 342.)

" 'Where, as here, the record shows without doubt that a defendant has pleaded guilty to a crime which he did not commit, the courts should hesitate to apply technical rules to prevent such defendant from obtaining relief.' (*In re Scruggs* (1971) 15 Cal.App.3d 290, 294 [citation].)" (*Jerome, supra*, 160 Cal.App.3d at p. 1095.)[9] Guided by that admonition, we deem this to be a proper case to treat this appeal as a petition for writ of habeas corpus. We therefore now turn to the issue of whether estoppel prevents our review of the plea bargain reached in the trial court.

**B.** *Public policy considerations do not favor estoppel in this case.*

Whether the doctrine of estoppel applies to actions in excess of a trial court's jurisdiction requires "a weighing of equities in the particular case, the effect of estoppel on the functioning of the courts, and considerations of public policy." (*People v. Ford* (2015) 61 Cal.4th 282, 287.) Given the paramount importance of the trial court's jurisdiction, we pause to note the difference between an act of the trial court undertaken without jurisdiction in the fundamental sense and an act undertaken in excess of jurisdiction, i.e., beyond statutory authority. As the California Supreme Court explains in *Ford*, "A court lacks jurisdiction in a fundamental sense when it has no authority at all over the subject matter or the parties, or when it lacks any power to hear or determine the case. . . . [¶] Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant

---

[9] Here, however, as we discuss in further detail *post*, defendant is not seeking relief from the plea.

10

case law may constrain the court to act only in a particular manner, or subject to certain limitations. . . . Because an ordinary act in excess of jurisdiction does not negate a court's fundamental jurisdiction to hear the matter altogether [citation], such a ruling is treated as valid until set aside. [Citation.] A party may be precluded from seeking to set aside such a ruling because of waiver, estoppel, or the passage of time." (*Id.* at pp. 286–287.) In other words, "where fundamental jurisdiction [is] lacking, it [cannot] be conferred by consent or estoppel, whereas consent or estoppel [can] supply jurisdiction for an act undertaken by the trial court merely in excess of its statutory power." (*Ellis, supra*, 195 Cal.App.3d at p. 343.)

Here, it is manifest that the trial court's error is premised on an excess of jurisdiction, not on a lack of fundamental jurisdiction. Clearly, the trial court had subject matter jurisdiction to hear and determine the case. The error was in the acceptance of an unauthorized and illegal plea bargain. Although defendant does not seek to withdraw his plea, our independent review of the record brings the validity of the plea bargain to the forefront of this appeal. Consequently, we now examine whether estoppel prevents our review of that bargain.

Whether estoppel applies depends on the importance of the irregularity not only to the parties but also to the functioning and integrity of the courts. (*Ellis, supra*, 195 Cal.App.3d at pp. 343–344.) Generally, in the context of plea bargains, the purpose of estoppel is to prevent defendants from playing fast and loose with the judicial system. "[T]he presence of a plea bargain injects other policy considerations into the calculus[,]" namely, preventing defendants from unfairly manipulating the system to obtain punishment far less than that called for by the statutes applicable to their conduct. (*Id.* at p. 345.)

11

In *People v. Hester* (2000) 22 Cal.4th 290, our Supreme Court determined that "defendants are estopped from complaining of sentences to which they agreed." (*Id.* at p. 295.) "Where the defendants have pleaded guilty in return for a specified sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack fundamental jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process. [Citations.]" (*Ibid.*, italics omitted.)

However, as we have already discussed, defendant is not challenging the validity of the plea. Rather, we address this issue as part of our independent review required under *Wende*. No manipulation or trifling is afoot. The policy considerations attendant to estoppel are designed to protect the functioning and integrity of the appellate court, not to hinder its mandated, independent review under *Wende*. Clearly, we, as a court, are not estopped from reviewing the validity of the plea.

C.    ***The plea bargain was a legal fiction.***

The root of the problem in this case is that the plea bargain for human trafficking of a minor for a sex act should never have been offered by the prosecution or approved by the trial court in the first place. Defendant's acquiescence in this improper plea cannot render it valid. (See *Alhusainy v. Superior Court* (2006) 143 Cal.App.4th 385, 391 [fact that defendant consented to and benefited from illegal banishment condition to probation did not validate improper plea agreement].) Notwithstanding the apparent intentions of all the concerned parties, the attempt to creatively fashion a resolution in this case was unauthorized.

Under California law, the crime of human trafficking is comprised of three distinct offenses, which are codified in section 236.1: (1) the deprivation or violation of the personal liberty of another with the intent to obtain forced labor or services is punishable by a state prison term of 5, 8, or 12 years (§ 236.1, subd. (a)); (2) the deprivation or violation of the personal liberty of another with the intent to commit one of several enumerated sexual offenses is punishable by a state prison term of 8, 14, or 20 years (§ 236.1, subd. (b)); and (3) causing or attempting to cause a minor to engage in a commercial sex act with the intent to commit one of several enumerated sexual offenses is punishable by a state prison term of 5, 8, or 12 years (§ 236.1, subd. (c)).

In this case, defendant was initially charged with, among other things, a violation of section 236.1, subdivision (b). Then, by amended information, the district attorney added an additional count, alleging a violation of section 236.1, subdivision (c) even though the victim was a 26-year-old adult. It is apparent from the record that the section 236.1, subdivision (c) offense was added to reduce defendant's punishment to five years in prison. Despite the district attorney's "belief" that defendant's conduct did not warrant eight years in prison, the power to prescribe the appropriate punishment for criminal behavior resides exclusively with the Legislature. (*People v. Tanner* (1979) 24 Cal.3d 514, 519, fn. 3.) Not surprisingly, defendant agreed to plead no contest to one count of section 236.1, subdivision (c), which subjected him to a five-year minimum—instead of an eight-year minimum—triad, in exchange for the dismissal of seven felony counts.

"Pursuant to section 1192.5, a trial court is obligated to determine whether there is a factual basis for a plea of guilty or no contest when that plea arises from a negotiated resolution of the charges. (See *People v.*

13

*Hoffard* [(1995)] 10 Cal.4th [1170,] 1182.) Although not constitutionally required (*id.* at p. 1183), such an inquiry furthers constitutional considerations attending a guilty plea (*id.* at p. 1183, fn. 11), protects against the entry of a guilty plea by an innocent defendant, and makes a record in the event of appellate or collateral attacks on that plea. (*Id.* at p. 1183.) . . . A sufficient factual inquiry must be considered a necessary component of the legality of the proceedings. To decide otherwise would preclude review of the factual basis for a plea of guilty or no contest thereby frustrating the policies the statute is intended to advance. . . .

"Although section 1192.5 requires the trial court to satisfy itself there is a factual basis for the plea, this can be done by having the defendant describe the conduct or answer questions, by detailing a factual basis, or by having defense counsel stipulate to a particular document such as the transcript of a preliminary hearing as providing a factual basis for a plea. (*People v. Holmes* (2004) 32 Cal.4th 432, 435–436, 442 [citations].) The trial court need not obtain an element-by-element factual basis but need only obtain a prima facie factual basis for the plea. (*Id.* at p. 442; *People v. Calderon* (1991) 232 Cal.App.3d 930, 935 [citation].) '[A] trial court possesses wide discretion in determining whether a sufficient factual basis exists for a guilty plea. The trial court's acceptance of the guilty plea, after pursuing an inquiry to satisfy itself that there is a factual basis for the plea, will be reversed only for abuse of discretion.' (*Holmes, supra*, at p. 443.)" (*People v. Marlin* (2004) 124 Cal.App.4th 559, 571–572.)

With respect to the factual basis for the plea in this case, the trial court did not make an independent inquiry, but instead requested a stipulation from defense counsel. As indicated, a prima facie factual basis may be established in this manner. The problem here, however, was that the

stipulation was to a factual impossibility. Under such circumstances, the acceptance of the guilty plea was an abuse of discretion. (*Holmes, supra*, 32 Cal.4th at p. 443.)

We acknowledge that the high volume and rapid pace of criminal calendars in our trial courts often necessitates proceeding by stipulation. These practical realities, however, cannot override the significant policy considerations attending a guilty plea. It was the trial court's responsibility to ensure the plea was valid and if not, to refuse to allow it, despite the agreement among defendant, his lawyer, and the district attorney to its terms. (*Alhusainy v. Superior Court, supra*, 143 Cal.App.4th at p. 394; *Ellis, supra*, 195 Cal.App.3d at p. 342; § 1192.5.) The role of the trial court is not to merely "rubberstamp any agreement submitted by the parties, but [to] protect[] the public by ensuring the interests of justice are served by the agreement." (*People v. Andreotti* (2001) 91 Cal.App.4th 1263, 1275.) During the sentencing hearing, when it became abundantly clear *on the record* that the victim was "27" years old (an adult and not a minor), the trial court was obligated to ensure that its sentencing decision was not predicated on an invalid plea that was unauthorized by law. It did not do so.

We do not mean to stifle or discourage creative dispositions in our trial courts, especially where it stems from a desire to reach a fair and equitable result. But we cannot affirm such creativity where it compromises the integrity of the judicial system.

"Plainly the law has a strong interest in insuring that a defendant is convicted and punished only if he has done an act proscribed by a criminal statute. The diverse statutes comprising the criminal law are there for a reason; they are not like tools above a workbench to be selected by the parties to a criminal case according to their utility in getting rid of pending cases and

without regard to a defendant's conduct. The interest of the law in insuring a defendant has violated a specific penal statute is not simply the obvious one of avoiding the punishment of wholly innocent persons. The law also has an interest in insuring that, even where a defendant has committed some criminal act, his criminal conduct matches up with a statute that proscribes the conduct. Only in this way can the judicial system insure that a defendant's criminal conduct will receive the punishment the Legislature intended. Moreover, convictions for statutory offenses play an important role in the criminal justice system in identifying the kind of unlawful behavior a defendant has engaged in. Where there is no correlation between the defendant's behavior and the statute serving as the basis of conviction, the conviction becomes useless to probation officers, correctional authorities, and law enforcement personnel who use convictions routinely as convenient diagnostic tools, useful both for the rehabilitation of offenders and [for] the investigation of new offenses." (*Ellis, supra*, 195 Cal.App.3d at p. 345.)

Further, "[i]t should not be necessary to state that the obligation of a judge is to uphold the law . . . . In exercising its authority, the court cannot lose sight of its duty to follow the law and maintain the integrity of the judicial system. The plea in this case directly contravened these principles." (*Alhusainy v. Superior Court, supra*, 143 Cal.App.4th at p. 393.) As an appellate court charged with upholding the law and ensuring the fair and equitable resolution of the cases before us, we cannot affirm this sham plea simply because it inured to defendant's benefit. To ratify the ultimate result would compromise the integrity of the judicial system. This we cannot do.

**D.** *Remedies*

At the risk of redundancy we repeat: A defendant cannot plead no contest to human trafficking of a minor for a sex act when the victim is an adult well over the age of 18. Where, as here, the " 'trial court is asked to

16

approve an illegal plea bargain . . . the proper course of action for the court is clear.  It should decline to act in excess of its authority and should refuse to approve an arrangement under which it is called upon to do so.'  (*In re V.B.* (2006) 141 Cal.App.4th 899, 908 [citation]; accord, *People v. Soriano* (1992) 4 Cal.App.4th 781, 785 [citation] [' "Faced with . . . an unlawful plea bargain, a trial court should withhold approval of the bargain." '].)"  (*People v. John* (2019) 36 Cal.App.5th 168, 176.)

The interests of justice require that the order approving the no contest plea be set aside and the status quo be restored by reviving the dismissed counts to either be tried or disposed of in some other legally appropriate manner.[10]

## DISPOSITION

Treating the appeal as a petition for writ of habeas corpus, the petition is granted and the judgment is reversed.  On remand, the trial court is directed:  (1) to enter an order vacating the no contest plea to count 8; (2) to amend the information to remove count 8; and (3) to reinstate dismissed counts 1, 2, 3, 4, 5, 6, and 7.  The cause is remanded for proceedings consistent with the law and this opinion.

---

[10] It is not lost on us that by this holding there is a possibility that defendant may be subject to increased punishment.  We do not make this decision lightly.  It is not our intent to discourage appeals by criminal defendants, especially those by indigent defendants.  However, when tasked with independently reviewing the entire record for error under *Wende*, we must fulfill our duty to do so.

_____

Jackson, J.


WE CONCUR:


_____

Petrou, Acting P. J.


_____

Wiseman, J.*


A157529/*People v. Devonne Lavert Richardson*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

<u>A157529/People v. Devonne Lavert Richardson</u>

Trial Court:        Superior Court of the County of San Mateo

Trial Judge:        Jeffrey Finigan, J.

Counsel:        David L. Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Jeffrey M. Laurence, Assistant Attorneys General, Rene A. Chacon and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Respondent.